# 21-2292

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

ANTHONY T. COLLYMORE,

*Plaintiff - Appellant,*

*v.*

KRYSTAL MYERS, RN; all defendants are being sued in their individual capacity, K. PHILLIPS, RN/Medical Supervisor; all defendants are being sued in their individual capacity, CHENA MCPHERSON, APRN; all defendants are being sued in their individual capacity

*Defendants - Appellees,*

COMMISSIONER OF THE DEPARTMENT OF CORRECTIONS, All defendants are being sued in their individual and official capacities, WARDEN, OF MACDOUGALL, All defendants are being sued in their individual and official capacities, ROBERT MARTIN, All defendants are being sued in their individual and official capacities, LIGHTNER, MS., H.S.A. OF MACDOUGALL, All defendants are being sued in their individual and official capacities, JOHN DOE # 1, All defendants are being sued in their individual and official capacities, JOHN DOE #2, All defendants are being sued in their individual and official capacities, JOHN DOE #3, All defendants are being sued in their individual and official capacities, JANINE BRENNAN, All defendants are being sued in their individual and official capacities,

*Defendants.*

On Appeal from the United States District Court for the District of Connecticut, No. 3:21-cv-00303, Before the Honorable Alfred V. Covello, U.S. District Judge

## BRIEF AND APPENDIX FOR PLAINTIFF-APPELLANT

OMAR A. KHAN
LAUREN E. MATLOCK-COLANGELO
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................iv

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES..............................................................2

STATEMENT OF THE CASE .................................................................3

I.   FACTUAL BACKGROUND...........................................................8

     A.   MacDougall Correctional Institution ..................................8

          1.   HSA Lightner (Named in Complaint) ........................9

          2.   APRN McPherson (Named in Amended Complaint)................9

          3.   Nurse Meyers (Named in Amended Complaint)......................11

          4.   Warden Chapdelain (Named in Complaint) ..........................12

     B.   Corrigan Correctional Facility ...........................................13

          1.   Nurse Phillips (Named in Amended Complaint)......................14

          2.   Nurse Brennan (Named in Complaint) ......................................15

          3.   Warden Martin (Named in Complaint)....................................16

          4.   Commissioner Cook (Named in Complaint) ............................16

II.  PROCEDURAL HISTORY .........................................................17

SUMMARY OF ARGUMENT ............................................................19

ARGUMENT ........................................................................................23

I.   STANDARD OF REVIEW ...........................................................23

II.  THE DISTRICT COURT IMPROPERLY DISMISSED MR. COLLYMORE'S
     ORIGINAL CLAIMS AGAINST THE NAMED DEFENDANTS ...............................23

     A.   Mr. Collymore Raised Colorable Claims Against Warden
          Martin, Warden Chapdelain, Commissioner Cook, and HSA
          Lightner ..........................................................................24

          1.   Mr. Collymore alleged that Warden Martin knew of and
               disregarded an excessive risk to Mr. Collymore's health
               and safety ................................................................26

2.    Mr. Collymore alleged that Warden Chapdelain knew of and disregarded an excessive risk to Mr. Collymore's health and safety........................................................................29

3.    Mr. Collymore alleged that Commissioner Cook knew of and disregarded an excessive risk to Mr. Collymore's health and safety........................................................................30

4.    Mr. Collymore alleged that HSA Lightner knew of and disregarded an excessive risk to Mr. Collymore's health and safety ...............................................................................31

B.    Mr. Collymore Should Have Been Instructed To File An Amended Complaint Against All The Original Named Defendants ...........................................................................32

III.  MR. COLLYMORE SUFFICIENTLY ALLEGED THAT HE SUFFERED FROM A CLEARLY ESTABLISHED SERIOUS MEDICAL NEED..........................................34

A.    Mr. Collymore's Allegations Were Sufficient *Solely* Based On The Defendants' Being On Notice Of His Suffering And Chronic Pain .....................................................................36

1.    It is clearly established that the Eighth Amendment forbids deprivations of medical care that perpetuate chronic pain ...............................................................................37

2.    Mr. Collymore sufficiently alleged that he suffered chronic pain as a result of the Defendants-Appellees' failure to adequately treat his scalp condition ..........................41

3.    The District Court's contrary conclusion relied on inapposite case law concerning minor skin conditions............43

B.    Mr. Collymore Sufficiently Alleged That His Condition Warranted Referral To A Doctor, Interfered With Daily Activities, And Caused Chronic Pain....................................44

1.    It is clearly established that a skin condition that is worthy of comment, causes chronic pain, and interferes with daily activities is a serious medical need..........................45

2.    Mr. Collymore sufficiently alleged that he suffered from a medical condition that was worthy of comment, interfered with his daily activities, and caused chronic pain...........................................................................46

C.     Mr. Collymore Sufficiently Alleged That He Suffered From Keloids ................................................................................49

       1.     It is clearly established that failure to adequately treat painful keloid scarring violates the Eighth Amendment .......... 49

       2.     At minimum, this case should be remanded to allow Mr. Collymore to file a Second Amended Complaint alleging that he suffered from keloid scarring ....................................... 51

IV.    THE DISTRICT COURT IMPROPERLY IGNORED MR. COLLYMORE'S REQUEST FOR INJUNCTIVE RELIEF ................................................ 52

CONCLUSION ............................................................................................ 53

APPENDIX

The District Court's April 2, 2021 Ruling and Order .................................. A1

The District Court's April 19, 2021 Ruling and Order on Motion to Amend ................................................................................................. A20

The District Court's September 9, 2021 Ruling on Motion to Dismiss .................................................................................................... A23

The District Court's Judgment ................................................................ A35

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Anderson v. Recore*, 317 F.3d 194 (2d Cir. 2003) .................................23, 32, 34, 35

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................25, 41

*Austin v. Ford Models, Inc.*, 149 F.3d 148 (2d Cir. 1998), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ...................................................................................22, 42, 49

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................41

*Branum v. Clark*, 927 F.2d 698 (2d Cir. 1991) ......................................................51

*Braxton/Obed-Edom v. City of New York*, No. 1:17-cv-00199, 2018 WL 11316020 (S.D.N.Y. Dec. 20, 2018), *report and recommendation adopted in* 368 F. Supp. 3d 729 (S.D.N.Y. 2019) ..............................................................7, 28, 31, 32, 33, 52

*Brock v. Wright*, 315 F.3d 158 (2d Cir. 2003) ........................................ 8, 21, 22, 36, 37, 38, 39, 41, 42, 44, 45, 46, 48, 50

*Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998) ...............................................45

*Diaz v. Hanna*, No. 3:20-cv-1050, 2020 WL 6453936 (D. Conn. Nov. 3, 2020) ...........................................................................................47

*Dotson v. Fischer*, 613 F. App'x 35 (2d Cir. 2015) ...........................4, 20, 27, 30, 48

*El-Massri v. New Haven Correctional Center*, No. 3:18-cv-1249, 2019 WL 6606457 (D. Conn. Dec. 5, 2019) ................................................43

*Elliott v. City of Hartford*, 649 F. App'x 31 (2d Cir. 2016) ...................................49

*Gomez v. USAA Federal Savings Bank*, 171 F.3d 794 (2d Cir. 1999) ...................51

*Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013) ................................................................ 5, 20, 25, 26, 28, 32, 33

*Hill v. Curcione*, 657 F.3d 116 (2d Cir. 2011) .......................................................27

*Jusino v. Gallagher*, No. 3:21-cv-689, 2021 WL 3726010 (D. Conn. Aug. 23, 2021) ............................................................34

*Kerr v. Cook*, No. 3:21-cv-93, 2021 WL 765023 (D. Conn. Feb. 26, 2021) ........................................................................32

*Lewal v. Tippy*, 133 F.3d 907 (2d Cir. 1998) ...........................................28

*McEachin v. McGuinnis*, 357 F.3d 197 (2d Cir. 2004) ...........................23

*McFadden v. Annucci*, No. 18-cv-6684, 2021 WL 4942064 (W.D.N.Y. Oct. 22, 2021) ...............................................49

*McFadden v. Noeth*, 827 F. App'x 20 (2d Cir. 2020) ........ 23, 24, 25, 29, 30, 31, 32

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) ....................................35

*Mills v. Fenger*, 216 F. App'x 7 (2d Cir. 2006)........................................46

*Neary v. Wu*, 753 F. App'x 82 (2d Cir. 2019) ......................... 21, 35, 37, 38, 39, 41

*Osorio-Pizarro v. Burdo*, No. 9:16-cv-156, 2019 WL 1010420 (N.D.N.Y. Mar. 4, 2019) .............................................40

*Reid v. Nassau County Sheriff's Department*, No. 13-CV-1192, 2014 WL 4185195 (E.D.N.Y. Aug. 20, 2014) ......................43

*Richards v. City of New York*, No. 1:19-cv-10697, 2021 WL 4443599 (S.D.N.Y. Sept. 28, 2021)..................................50

*Robbs v. McCrystal*, No. 3:18-cv-2150, 2019 WL 4933495 (D. Conn. Oct. 7, 2019) ...................................................40, 42

*Rodriguez v. Manenti*, 606 F. App'x 25 (2d Cir. 2015)..............................37, 39, 40

*Samuels v. Jackson*, No. 97-CV-2420, 1999 WL 92617 (S.D.N.Y. Feb. 22, 1999) .........................................................43

*Shannon v. Venettozzi*, 670 F. App'x 29 (2d Cir. 2016) .........................52

*Shenk v. Cattaraugus County*, 305 F. App'x 751 (2d Cir. 2009) ............46

*Sherman v. Cook*, No. 3:20-cv-1485, 2021 WL 311283 (D. Conn. Jan. 29, 2021)................................................48

*Smith v. Greifinger*, No. 99-0042, 2000 WL 288362 (2d Cir. Mar. 17, 2000) ................................................................................................50

*SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172 (2d Cir. 2000) .....................25

*Sudler v. City of New York*, 689 F.3d 159 (2d Cir. 2012)............................7, 23, 52

*Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020)...................................24, 25, 29

## STATUTORY PROVISIONS

28 U.S.C.
    § 1291 ......................................................................................................2
    § 1331 ......................................................................................................1
    § 1915A.......................................................................................1, 3, 17

42 U.S.C. § 1983 ................................................................................1, 3, 18

# JURISDICTIONAL STATEMENT

On March 8, 2021, Anthony T. Collymore filed suit pursuant to 42 U.S.C. § 1983, alleging that eight defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment of the U.S. Constitution. D. Ct. ECF No. 1 ("Complaint"). The District Court had jurisdiction pursuant to 28 U.S.C. § 1331.

On April 2, 2021, the District Court dismissed Mr. Collymore's Complaint pursuant to 28 U.S.C. § 1915A(b). D. Ct. ECF No. 7 ("First Dismissal"). The Court then granted Mr. Collymore permission to file an amended complaint limited to alleging facts that Chena McPherson, Krystal Myers, and K. Phillips (together "Defendants-Appellees") "treated the plaintiff with some frequency and did not alter ineffective prior treatment." D. Ct. ECF No. 12; *see also* D. Ct. ECF No. 10 at 1 ("On April 2, 2021, the court dismissed the complaint without prejudice to Collymore filing an amended complaint, if he could allege facts showing that the defendants identified as doctors Doe 2 and Doe 3 'treated him frequently and did not alter treatments proved ineffective.'"). Mr. Collymore filed his Amended Complaint on May 20, 2021, naming Defendants-Appellees. D. Ct. ECF No. 13 ("Amended Complaint").

On September 10, 2021, the District Court dismissed all claims against the Defendants-Appellees. D. Ct. ECF No. 30 ("Second Dismissal"). That same day,

the District Court entered judgment of dismissal.  D. Ct. ECF No. 31.  The District Court's judgment of dismissal constitutes a final judgment disposing of all the claims in this case.

Mr. Collymore timely appealed the District Court's final judgment on September 17, 2021.  D. Ct. ECF No. 32.  This Court has jurisdiction over Mr. Collymore's appeal from the District Court's final judgment under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.  Whether the District Court erred in dismissing Mr. Collymore's Complaint, and if not, whether he should have been given an opportunity to amend his Complaint against the named defendants.[1]

2.  Whether Mr. Collymore's Amended Complaint sufficiently alleged a denial of a clearly established right, and if not, whether Mr. Collymore should be permitted to further amend his Complaint to reallege that he suffered from keloids.

---

[1]  Mr. Collymore does not challenge the District Court's dismissal of the claims against Dr. Doe 1 for falling outside the statute of limitations.  Dr. Doe 2 and Dr. Doe 3 were named in Mr. Collymore's Amended Complaint as Chena McPherson and Krystal Myers, respectively.  D. Ct. ECF No. 11.

3.      Whether the District Court erred in dismissing Mr. Collymore's
Amended Complaint on qualified immunity grounds in light of his
request for injunctive relief.

## STATEMENT OF THE CASE

Acting *pro se*, Anthony T. Collymore brought Section 1983 claims against
eight defendants, alleging deliberate indifference to his serious medical needs. He
sought damages as well as injunctive and declaratory relief stemming from the
defendants' failure to provide him adequate medical care in violation of the Eighth
Amendment of the United States Constitution. The Honorable Alfred V. Covello
for the United States District Court for the District of Connecticut *sua sponte*
dismissed Mr. Collymore's Complaint pursuant to 28 U.S.C. § 1915A(b). First
Dismissal. Mr. Collymore filed an Amended Complaint naming three defendants.
The District Court again dismissed all of Mr. Collymore's claims, this time on
qualified immunity grounds. Second Dismissal. The Court then entered judgment
of dismissal. D. Ct. ECF No. 31. Mr. Collymore timely appealed. D. Ct. ECF No.
32.

Mr. Collymore first developed his serious medical need, a painful scalp
condition, in 2015. Compl. 9.[2] This condition manifested as purulent, bleeding

---

[2]     Page numbers for the Complaint and Amended Complaint refer to the ECF
page number printed at the top of the page.

sores that spread over a large portion of Mr. Collymore's scalp and eventually onto

his face. *Id.* at 9-10, 16, 20. Over the course of six years, Mr. Collymore made

repeated requests for adequate diagnosis and treatment of this serious medical

need. However, he was repeatedly prescribed a treatment known to be ineffective,

given incomplete courses of medication, and prevented from seeing a

dermatologist or other doctor capable of properly diagnosing and treating his

condition. Amend. Compl. 7-9, 11-12. As a result of this ineffective and delayed

treatment, Mr. Collymore's condition deteriorated, causing keloid scarring and

significant pain that interfered with his daily living, including his ability to sleep.

*Id.* at 6, 10 (interference with sleep); *id.* at 20 (keloids); Compl. 13 (interference

with sleep).

*First*, the District Court erred in dismissing all of Mr. Collymore's claims in

his Complaint *sua sponte*, notwithstanding that Mr. Collymore's Complaint

contained factual allegations supporting his claim that each of the named

defendants was personally involved in this denial of adequate medical care. As

relevant here, the Court determined that Mr. Collymore did not state a supervisory

liability claim against Commissioner Rollin Cook ("Commissioner Cook"),

Warden Chapdelain, and Warden Robert Martin ("Warden Martin"). First

Dismissal 13-15. The Court also dismissed the claims against nurse and Health

Services Review Coordinator Janine Brennan ("Nurse Brennan") because Mr.

"Collymore has no constitutional right to have his grievances properly processed."
*Id.* at 16.  Finally, the Court determined that Health Services Administrator
Lightner ("HSA Lightner") "was not deliberately indifferent to [Mr. Collymore's]
medical needs."  *Id.* at 12.  In so ruling, the District Court failed to afford Mr.
Collymore the "'special solicitude'" to which he was entitled as a *pro se* plaintiff.
*Dotson v. Fischer*, 613 F. App'x 35, 38-39 (2d Cir. 2015) (district court must
construe *pro se* complaint "to raise the strongest arguments [it] suggests").  When
properly construed, Mr. Collymore sufficiently alleged facts supporting a
reasonable inference that Warden Martin, Warden Chapdelain, Commissioner
Cook, and HSA Lightner were subjectively aware of, and disregarded, a substantial
risk to Mr. Collymore's health.  These allegations were sufficient to establish
deliberate indifference at the pleading stage.  Accordingly, the District Court erred
in dismissing Mr. Collymore's claims against these defendants.

Even if Mr. Collymore's original allegations fell short (they did not), a
"'liberal reading'" of Mr. Collymore's Complaint indicates that "'a valid claim
might be stated'" against all named defendants, and he should have been permitted
to file an amended complaint to allege additional factual support for all of his
claims.  *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("A *pro*
*se* complaint 'should not [be] dismiss[ed] without [the Court's] granting leave to
amend at least once when a liberal reading of the complaint gives any indication

that a valid claim might be stated." (brackets in original)). But the District Court merely instructed Mr. Collymore that he could "file[] an amended complaint against Drs. Doe 2 and Doe 3 only if he can allege facts showing that one or both doctors treated him frequently and did not alter treatments that proved ineffective." First Dismissal 18. This was error, and Mr. Collymore should have been permitted to amend his claims against the named defendants as well. At minimum, this case should be remanded to allow Mr. Collymore to file a Second Amended Complaint naming Warden Martin, Warden Chapdelain, Commissioner Cook, HSA Lightner, and Nurse Brennan.

*Second*, the District Court further erred in dismissing Mr. Collymore's Amended Complaint, alleging that Defendants-Appellees Chena McPherson ("APRN McPherson"), Krystal Myers ("Nurse Myers"), and K. Phillips ("Nurse Phillips") were deliberately indifferent to his serious medical needs. Amend. Compl. 5-6. Relying on factually inapposite cases concerning rashes and other minor skin conditions, the District Court determined that Mr. Collymore's scalp condition was not a clearly established serious medical need. Second Dismissal 10-11. The Court therefore granted the Defendants-Appellees' motion to dismiss on qualified immunity grounds. *Id.* at 11. In so ruling, the District Court overlooked Mr. Collymore's allegations that his condition resulted in keloid scarring, was known to warrant referral to a dermatologist, interfered with his daily

living (including his ability to sleep), and caused chronic pain. The District Court also ignored this Court's case law holding that such conditions, even standing alone but certainly in combination, constitute serious medical needs. Because Mr. Collymore's medical condition is a clearly established serious medical need, the District Court's dismissal should be reversed and this case remanded for further proceedings.

Even if the allegations in Mr. Collymore's Amended Complaint fell short (they did not), the District Court still should have permitted him to file a Second Amended Complaint alleging additional details about his serious medical need. *See, e.g.*, *Braxton/Obed-Edom v. City of N.Y.*, No. 1:17-cv-00199, 2018 WL 11316020, at *8 (S.D.N.Y. Dec. 20, 2018) (recommending that *pro se* plaintiff be given a second opportunity to amend because "it is not yet apparent that another opportunity to amend would be futile"), *report and recommendation adopted in* 368 F. Supp. 3d 729 (S.D.N.Y. 2019). Specifically, Mr. Collymore could have amended his complaint to include additional information about his keloid scarring and the severity and duration of his chronic pain.

***Finally***, the District Court erred in dismissing all the claims in Mr. Collymore's Amended Complaint on qualified immunity grounds because Mr. Collymore requested injunctive relief. As this Court has explained, "[q]ualified immunity does not bar actions for declaratory or injunctive relief." *Sudler v. City*

*of New York*, 689 F.3d 159, 177 (2d Cir. 2012).  At minimum, the District Court's dismissal of Mr. Collymore's injunctive relief claims must be reversed, and this case remanded for further proceedings.

## I.    FACTUAL BACKGROUND

### A.    MacDougall Correctional Institution

Mr. Collymore developed his scalp condition in 2015 while he was living at MacDougall Correctional Institution ("MacDougall").  Compl. 9.  The condition manifested as painful open sores on his scalp that produced blood and puss.  Over time, the condition became repeatedly infected, causing "intolerable" pain and hair loss.  *Id.* at 10-12, 16, 20; Amend. Compl. 9, 13, 16.  During the six years preceding Mr. Collymore's filing of his district court complaint, the failure to diagnose and properly treat this condition resulted in prolonged pain and permanent scarring, including the formation of keloids.[3]  Compl. 20.  His condition interfered with his daily life, including by affecting his ability to sleep.  Amend. Compl. 6, 10, 15; Compl. 13.

---

[3]    As explained by this Court in *Brock v. Wright*, "[k]eloids are abnormal overgrowths of fibrous tissue that, when triggered by a skin injury, typically extend beyond the location of the original wound."  315 F.3d 158, 161 (2d Cir. 2003). They can cause "disfigurement, nerve fibers may become tangled in the overgrowth tissue leading to 'constant [ ] pain, local irritation, and paresthesias.'" *Id.*

Mr. Collymore first complained to the Department of Corrections about his scalp condition in February 2015. Compl. at 9. As detailed below, Mr. Collymore repeatedly informed MacDougall staff and supervisors about the severity of his scalp condition and the ineffectiveness of the limited medical care he received.

### 1. HSA Lightner (Named in Complaint)

Mr. Collymore twice sought assistance from HSA Lightner. Compl. 10. He first wrote to HSA Lightner on August 11, 2017, two years after his scalp condition began. *Id.* Mr. Collymore's letter "ma[de] her aware of [his] scalp condition, and that [he] wasn't being provided adequate medical care." *Id.* When Mr. Collymore continued to receive inadequate medical care, he again wrote to HSA Lightner on April 22, 2019, informing her that his "scalp had worsened, the infection persist[ed], that the condition was an on-going one and had been addressed numerous times by MacDougall's medical staff, and that the condition had not yet been diagnosed or properly treated." *Id.* at 10-11. Despite being informed that Mr. Collymore's condition was not being properly treated, HSA Lightner failed "to ensure that [Mr. Collymore] received adequate medical care." *Id.* at 11.

### 2. APRN McPherson (Named in Amended Complaint)

On May 14, 2019, Mr. Collymore first reported to APRN McPherson for treatment of his condition. Amend. Compl. 7-8. Mr. Collymore informed APRN

McPherson that he was suffering from an ongoing, unresolved scalp condition and that previous treatment using Sebex Shampoo had been ineffective. *Id.* at 7. He also asked to see a doctor or a specialist. *Id.* Despite being informed about the inadequacy of this course of treatment, APRN McPherson prescribed Sebex Shampoo and "did nothing to alleviate [Mr. Collymore's] pain [and] discomfort." *Id.* Further, APRN McPherson downplayed the severity of Mr. Collymore's condition in her visit notes, describing it as simply a "rash." *Id.* at 8.

A week later on May 21, 2019, Mr. Collymore was again seen by APRN McPherson and informed her that his condition had worsened. Amend. Compl. 8. He repeated his request to see a doctor or a specialist. *Id.* At the time, Mr. Collymore was also suffering from a heart condition not at issue here. Rather than addressing both of Mr. Collymore's medical needs, APRN McPherson told Mr. Collymore to pick one condition because she wouldn't "do both." *Id.* Because Mr. Collymore chose the heart condition, APRN McPherson did not treat his scalp despite being informed that it was getting worse. *Id.*

Mr. Collymore saw APRN McPherson for a final time on August 14, 2019. Amend. Compl. 8. By this time, Mr. Collymore's scalp condition had become infected. *Id.* APRN McPherson told Mr. Collymore that she would prescribe both a cream and a shampoo other than Sebex. *Id.* at 9. However, Mr. Collymore was again given Sebex Shampoo, despite APRN McPherson's awareness that it was

ineffective.  *Id.*  Moreover, Mr. Collymore was only given a month's worth of the

prescription cream, despite being told that he would be receive a three-month

supply.  *Id.*  As a result of this inadequate treatment, Mr. Collymore's scalp

condition "persist[ed] and worsened."  *Id.*

### 3. Nurse Meyers (Named in Amended Complaint)

On October 13, 2019, Mr. Collymore was seen by Nurse Myers and showed

her "his scalp, the scabs, open so[res], blood [and] puss."  Amend. Compl. 9.  Mr.

Collymore told Nurse Myers that the condition was "an on-going issue" and was

progressively getting worse.  *Id.*  Though Nurse Myers promised to refer him to a

doctor, she did not do so.  *Id.*  Moreover, Nurse Myers "lied in a document

concerning this encounter; and downplayed [Mr. Collymore's] condition" by

describing the condition as "slightly red [and] itchy."  *Id.*  Finally, Nurse Myers

"did nothing to alleviate [Mr. Collymore's] pain and suffering."  *Id.*

Mr. Collymore next saw Nurse Myers on December 8, 2019, after "losing

sleep" because of his painful condition.  Amend. Compl. 6, 10, 15.  Nurse Myers

was ordered to see Mr. Collymore after Mr. Collymore asked the block officer to

call medical.  *Id.* at 10.  However, Nurse Myers refused to do so because she had

"other things to do."  *Id.*  As a result, Mr. Collymore was sent to the main medical

building for examination.  Nurse Myers was again ordered to see Mr. Collymore in

the main medical unit.  *Id.*  Mr. Collymore requested to be seen by a doctor, but

Nurse Myers refused. *Id.* Eventually, Mr. Collymore became emotional and other nurses intervened. *Id.* One of these nurses determined that Mr. Collymore's scalp was infected and needed immediate treatment. *Id.* Nurse Myers was ordered to give Mr. Collymore two weeks of antibiotics and to schedule him a doctor's appointment for the next day. *Id.*

Instead of following instructions, Nurse Myers gave Mr. Collymore only "enough antibiotics to last a few days." Amend. Compl. 11. Nurse Myers promised to give him the remaining antibiotics but did not do so. *Id.* Nurse Myers also did not schedule Mr. Collymore to see a doctor. *Id.* As a result, Mr. Collymore's condition continued to deteriorate. *Id.*

### 4. Warden Chapdelain (Named in Complaint)

Faced with chronic pain and a worsening scalp condition, Mr. Collymore "wrote to the Defendant-Warden of MacDougall on multiple occasions, seeking help and asking the Warden to take action to ensure that [Mr. Collymore] received adequate medical care." Compl. 14. Moreover, Mr. Collymore "personally accosted [Warden Chapdelain] on multiple occasions during his routine tours of the facility, putting the Warden on notice of Plaintiff's condition and asking for help." *Id.*

Despite being repeatedly informed about both Mr. Collymore's serious medical need and his receipt of inadequate medical care, Warden Chapdelain did

nothing to ensure that Mr. Collymore received the care he was entitled to under the Eighth Amendment. Compl. 14-15. As a result, Mr. Collymore's condition persisted for the four years he remained at MacDougall. *Id.* at 10, 13, 15, 20.

**B.     Corrigan Correctional Facility**

On or around December 12, 2019, Mr. Collymore was transferred to Corrigan Correctional Facility ("Corrigan"). Compl. 15. Mr. Collymore continued to suffer from his serious scalp condition, and immediately sought medical care following his transfer. On December 16, 2019, and January 13, 2020, Mr. Collymore was given antibiotics to treat the persistent infection on his scalp and was told he would be scheduled to see a dermatologist. *Id.*; Amend. Compl. 12. Despite the prison staff's evident awareness that Mr. Collymore needed to be seen by a dermatologist, he was not taken to see a specialist. Compl. 15-16; Amend. Compl. 12. Moreover, the prescribed antibiotics failed to resolve his infection. Compl. 16.

Mr. Collymore continued to seek adequate treatment for his serious medical need until he filed his Complaint on March 8, 2021. However, as before, Mr. Collymore was denied appropriate care, resulting in chronic pain, repeated infections, and scarring.

### 1. Nurse Phillips (Named in Amended Complaint)

From February to December 2020, Mr. Collymore wrote Nurse Phillips five times seeking medical care for his persistent, painful scalp condition. Despite being informed that Mr. Collymore was in pain, Nurse Phillips did not intervene, but repeatedly stated that he was on a list to see dermatology. Amend. Compl. 14.

Mr. Collymore first contacted Nurse Phillips on February 21, 2020, stating that he was "in pain and suffering" and that his condition was "bad." Amend. Compl. 13. After receiving no response, Mr. Collymore again wrote to Nurse Phillips, stating that his condition "had gone untreated" and gotten worse. *Id.* He explained that he could not "tolerate" his condition anymore. *Id.* Nurse Phillips continued ignoring his requests for assistance. *Id.*

Mr. Collymore again wrote Nurse Phillips on March 18, 2020, "informing her that he was 'suffering, in need of medical attention, [his] scalp constantly on fire.'" Compl. 16; Amend. Compl. 13. In response, Nurse Phillips stated that Mr. Collymore would "have an appt. with dermatology." Amend. Compl. 13. However, Nurse Phillips "failed to provide [Mr. Collymore] any medical treatment." *Id.*

Mr. Collymore wrote to Nurse Phillips on September 10, 2020, informing her that had "continued to suffer" and asking that he receive treatment. Amend. Compl. 14. Despite being aware that Mr. Collymore had suffered for almost six

months since last writing her, Nurse Phillips merely reiterated that he was "on the list to see dermatology." *Id.*

Finally, on December 22, 2020, Mr. Collymore again wrote to Nurse Phillips, informing her that "his scalp was inflamed, that [he] couldn't sleep, that his last request … for help was totally ignored" and asked to see "anyone that c[ould] help." Amend. Compl. 14. Again, Nurse Phillips merely stated that Mr. Collymore was on a "list to be seen." *Id.* Despite Nurse Phillips's awareness that Mr. Collymore needed to see a dermatologist and was suffering from a painful and deteriorating condition, Mr. Collymore was not taken to see a dermatologist before he filed his Complaint, more than a year after he first contacted Nurse Phillips and six years since he first asked for medical care for his scalp condition.

### 2. Nurse Brennan (Named in Complaint)

Mr. Collymore filed several medical grievances seeking adequate medical care, the first one being on March 1, 2020. Compl. 16-19; Amend. Compl. 13. These medical grievances were reviewed by Nurse Brennan, who returned one of Mr. Collymore's grievances without disposition. Compl. 18. Mr. Collymore appealed this grievance to the Health Services Supervisor, but his appeal was answered by Nurse Brennan herself. *Id.* Mr. Collymore then appealed to the Director of Health Services, but his appeal was again answered by Nurse Brennan. *Id.* As a result of Nurse Brennan's handling of Mr. Collymore's grievances, he

faced "substantial delay in the … exhausti[on] of his remedies." *Id.* During that time, his continued to suffer the chronic pain caused by his condition. *Id.*

### 3. Warden Martin (Named in Complaint)

Mr. Collymore first wrote to Warden Martin on March 20, 2020, explaining that his scalp condition had spread to his face, had become infected, and was "on fire and itching." D. Ct. ECF No. 1-1 ("Exhibits to Compl."), at 12-13 (March 8, 2021); *see also* Compl. 16. Warden Martin sent a letter in response, explaining that non-urgent medical appointments were on hold because of the Covid-19 pandemic. Exhibits to Compl. 14.

His scalp condition still not properly addressed, Mr. Collymore again spoke to Warden Martin on July 8, 2020, "apprising him of Plaintiff's degenerat[ing] condition." Compl. 16.

Finally, Mr. Collymore spoke to Warden Martin on November 23, 2020, nine months after Mr. Collymore's letter to the Warden. Compl. 19. Mr. Collymore complained about the mishandling of his medical grievances. *Id.* Instead of addressing Mr. Collymore's continuing receipt of inadequate medical care, "Warden Martin told [Mr. Collymore] to write to the C.R.O.O." *Id.*

### 4. Commissioner Cook (Named in Complaint)

Mr. Collymore wrote to Commissioner Cook on July 13, 2020, stating that he had been suffering from the same scalp condition "for years" and had "wr[itten]

medical numerous times concerning this issue, … filed grievances, … spoken to countless person[n]el to include the Warden." Exhibits to Compl. 10. He additionally explained that he had not seen an outside physician, despite repeated promises that he would, and "continue[d] to suffer in pain, and discomfort, also embarrassment." *Id*. at 11.

## II. PROCEDURAL HISTORY

Mr. Collymore commenced his suit on March 8, 2021, filing a *pro se* complaint against eight defendants: Commissioner Cook, Warden Chapdelain, Warden Martin, HSA Lightner, Nurse Brennan, Dr. Doe 1, Dr. Doe 2, and Dr. Doe 3. The District Court dismissed Mr. Collymore's Complaint on April 2, 2021, pursuant to 28 U.S.C. § 1915A(b). First Dismissal 18.

The District Court dismissed the claims against Commissioner Cook because "[t]he fact that a supervisory official does not act in response to a letter from an inmate is insufficient to establish that official's personal involvement." First Dismissal 14.

The District Court also dismissed the claims against Warden Chapdelain because Mr. Collymore was being seen by medical staff during the five years he was confined at MacDougall and "[p]rison administrators are entitled to defer to the opinions of medical providers." First Dismissal 14. The District Court also noted that Mr. Collymore "allege[d] no facts regarding the content of the letters of

[sic] conversations" with Warden Chapdelain. *Id.* The District Court similarly dismissed the claims against HSA Lightner because "in response to his letters to Ms. Lightner, [Mr.] Collymore was seen by medical staff" and because Mr. Collymore "d[id] not allege that Lightner is a medical provider who could order a dermatology consult." *Id.* at 12.

With respect to Warden Martin, the District Court determined that he had acted in response to Mr. Collymore's March 20, 2020, letter by informing Mr. Collymore that non-emergency medical visits were suspended due to the Covid-19 pandemic. First Dismissal 15. The District Court additionally determined that "[t]he fact that the warden was unable to give [Mr.] Collymore the relief he sought in March 2020 and later in July 2020, does not establish a claim for supervisory liability." *Id.*

The District Court dismissed the claims against Nurse Brennan because the Court determined that inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed. First Dismissal 15-16.[4]

---

[4]    The District Court also dismissed the claims against the Drs. Doe. The Court determined that Mr. Collymore's claims against Dr. Doe 1 fell outside Connecticut's three-year statute of limitations for Section 1983 claims. First Dismissal 12. The District Court also determined that Mr. Collymore's allegations at most suggested that Drs. Doe 2 and 3 were negligent. *Id.* at 11. The District Court provided that Mr. Collymore could file "an amended complaint against Drs. Doe 2 and Doe 3 only if he can allege facts showing that one or both doctors

The District Court then granted Mr. Collymore permission to file an amended complaint naming the Defendants-Appellees, stating that "the amended complaint shall allege facts showing that these defendants treated the plaintiff with some frequency and did not alter ineffective prior treatment." D. Ct. ECF No. 12. Mr. Collymore filed his Amended Complaint on May 20, 2021, seeking damages and injunctive relief. Amend. Compl. 6.

Nurse Myers and Nurse Phillips moved to dismiss the complaint on qualified immunity grounds. The District Court determined that there were "no United States Supreme Court or [S]econd [C]ircuit cases holding that a scalp condition causing painful open sores is a serious medical need." Second Dismissal 10. The District Court therefore held that Mr. Collymore's condition was not a clearly established serious medical need and the "defendants [we]re protected by qualified immunity on the claim." *Id.* at 11. The District Court did not address Mr. Collymore's claim for injunctive relief.

## SUMMARY OF ARGUMENT

The District Court erred in dismissing Mr. Collymore's original claims against HSA Lightner, Warden Chapdelain, Warden Martin, and Commissioner

---

treated him frequently and did not alter treatments that proved ineffective." *Id.* at 18. Finally, the District Court dismissed Mr. Collymore's claim for declaratory relief as based on past actions and duplicative of his other causes of action. *Id.* at 17-18.

Cook.  Mr. Collymore alleged that these defendants were subjectively aware of, and disregarded, a substantial risk to Mr. Collymore's health.  This was sufficient at the motion to dismiss stage, particularly given the "'special solicitude'" afforded *pro se* plaintiffs.  *Dotson*, 613 F. App'x at 38.

Moreover, the District Court erred in instructing Mr. Collymore that he could file an amended complaint only if he could "allege facts showing that one or both [of Drs. Doe 2 and 3] treated him frequently and did not alter treatments that proved ineffective."  First Dismissal 18.  A liberal reading of Mr. Collymore's Complaint suggests that a valid claim could be raised against all the named defendants.  Accordingly, the District Court should have instructed Mr. Collymore to file an amended complaint with additional factual allegations supporting his claims.  *Grullon*, 720 F.3d at 139 ("A *pro se* complaint 'should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (brackets in original)).

The District Court also erred in dismissing Mr. Collymore's Amended Complaint because Mr. Collymore alleged that he suffered from a clearly established serious medical need.  Both of Mr. Collymore's complaints alleged that his scalp condition resulted in significant, chronic pain and interfered with his daily living.  Amend. Compl. 7, 13, 15 (stating he had "pain and suffering"); *id.* at 13

(stating that he could not "tolerate it any longer"); *id.* at 6, 10 (interference with sleep); Compl. 13 (stating that the condition interfered with his ability to sleep); *id.* at 11, 16 (describing condition as "intolerable").  By 2015, when Mr. Collymore's condition began, it was clearly established that a plaintiff "establishes a serious medical need where [he] suffered chronic pain the magnitude of which probably falls somewhere between annoying and extreme." *Neary v. Wu*, 753 F. App'x 82, 84 (2d Cir. 2019) (quoting *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003)) (quotation marks omitted).  The District Court erred in ignoring this precedent and Mr. Collymore's allegations of chronic pain.

Moreover, even under its narrowest permissible interpretation, *Brock* clearly established that a skin condition is a serious medical need when (1) a reasonable doctor or patient would perceive the condition as important and worthy of comment or treatment, (2) the condition significantly affected daily activities, and (3) the condition caused chronic and substantial pain.  315 F.3d at 162 (discussing keloids).

The District Court did not cite *Brock*, nor properly consider that Mr. Collymore's condition (1) was repeatedly recognized by medical staff as warranting referral to a doctor or specialist, (2) interfered with Mr. Collymore's ability to sleep, and (3) was "intolerable" and resulted in chronic pain.  Amend. Compl. 6, 7, 13, 15 (stating he had "pain and suffering"); *id.* at 13 (describing

condition as intolerable); *id.* at 9-14 (Mr. Collymore told he would be referred to a doctor/dermatologist); Compl. 19 (Mr. Collymore prescribed pain killers); *id.* at 10, 13, 15, 19 (nurse said he would be referred to a doctor or dermatologist); *id.* at 13 (discussing the condition's effect on Mr. Collymore's sleep); *id.* at 11, 16 (describing condition as intolerable).

Further, even if *Brock* could be limited to the specific medical condition at issue (it cannot be), it still clearly established that a plaintiff alleging keloid formation sufficiently alleges a serious medical need. 315 F.3d at 163. Mr. Collymore's Complaint alleged that "[f]ailure to diagnose and properly treat [his] condition" resulted in "significant scarring and ke[]loids." Compl. 20. Because Mr. Collymore was *pro se* before the District Court, the Court should have read the allegations of his Complaint into his Amended Complaint. *See, e.g.*, *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998) (declining to extend rule in which amended complaint supersedes an earlier complaint to *pro se* parties), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Accordingly, the District Court should have determined that Mr. Collymore sufficiently alleged that he suffered from a clearly established serious medical need: keloids.

Finally, it was error for the District Court to ignore Mr. Collymore's claims for injunctive relief. The District Court conducted no analysis of these claims, but

instead dismissed all claims on qualified immunity grounds. But "[q]ualified immunity does not bar actions for declaratory or injunctive relief." *Sudler*, 689 F.3d at 177. The District Court should therefore at least have allowed Mr. Collymore to proceed with his request for injunctive relief.

For these reasons, the District Court's dismissal of Mr. Collymore's claims should be reversed, or this case remanded with instructions that Mr. Collymore be permitted to file an amended complaint.

## ARGUMENT

### I. STANDARD OF REVIEW

This Court reviews a district court's dismissal de novo, "accept[ing] as true all the material allegations of the complaint, and draw[ing] all reasonable inferences in the plaintiff's favor." *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003).

### II. THE DISTRICT COURT IMPROPERLY DISMISSED MR. COLLYMORE'S ORIGINAL CLAIMS AGAINST THE NAMED DEFENDANTS

As this Court has repeatedly recognized, "[s]ua sponte dismissal of a *pro se* complaint prior to service of process is a draconian device, which is warranted only when the complaint lacks an arguable basis either in law or fact." *McEachin v. McGuinnis*, 357 F.3d 197, 200-201 (2d Cir. 2004); *see also McFadden v. Noeth*, 827 F. App'x 20, 26 (2d Cir. 2020) ("Yet as we have long held, this 'draconian' measure of pre-service dismissal should only be taken in rare circumstances.").

Thus, "[w]here a *colorable claim* is made out, dismissal is improper prior to service of process and the defendants' answer." *McFadden*, 827 F. App'x at 26 (alteration and emphasis in original).

Nevertheless, the District Court *sua sponte* dismissed Mr. Collymore's complaint without waiting for the defendants to file an answer. This was error because Mr. Collymore's Complaint presented at least a colorable claim against Warden Martin, Warden Chapdelain, Commissioner Cook, and HSA Lightner. Moreover, to the extent the District Court determined that Mr. Collymore's Complaint contained insufficient factual allegations to support his claims, the Court should have instructed Mr. Collymore to file an amended complaint against *all* named defendants (not just Drs. Doe 2 and 3). The District Court's dismissal of Mr. Collymore's original claims should be reversed or vacated, and this case remanded for further proceedings.

A. **Mr. Collymore Raised Colorable Claims Against Warden Martin, Warden Chapdelain, Commissioner Cook, and HSA Lightner**

"[F]or deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020). Here, the District Court erred in dismissing Mr. Collymore's claims against Warden Martin, Warden Chapdelain, Commissioner Cook, and HSA Lightner because Mr.

Collymore stated a colorable claim that these defendants "personally knew of and disregarded an excessive risk" to Mr. Collymore's health. *Id.* at 619.[5]

Mr. Collymore's Complaint alleged that he contacted Warden Martin, Warden Chapdelain, Commissioner Cook, and HSA Lightner and apprised them of his serious medical need and receipt of inadequate medical care. Taken in the light most favorable to Mr. Collymore, these allegations are enough to support a claim that "each … defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Moreover, at minimum, these allegations raised a question of fact concerning the defendants' personal involvement in Mr. Collymore's alleged constitutional violation. *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) (stating that a supervisory official's "[p]ersonal involvement is a question of fact"). Mr. Collymore's allegations were therefore at least colorable and should not have been dismissed by the District Court *sua sponte*. *McFadden*, 827 F. App'x at 27 (vacating district court's *sua sponte* dismissal where plaintiff "stated a colorable

---

[5]    The District Court's interlocutory order is appealable following the District Court's dismissal of Mr. Collymore's Amended Complaint. *See SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 178 (2d Cir. 2000) ("Just as a notice of appeal from a final judgment brings up for review all reviewable rulings 'which produced the judgment,' a dispositive order clearly intended to end a litigation should have a similar effect." (citations omitted)).

claim that his Eighth Amendment rights were violated due to the inadequate treatment of his Hepatitis C").

> **1.** **Mr. Collymore alleged that Warden Martin knew of and disregarded an excessive risk to Mr. Collymore's health and safety**

This Court has previously explained that a *pro se* plaintiff may survive dismissal by alleging facts supporting an inference that the official "became aware of the alleged conditions of which [the plaintiff] complained." *Grullon*, 720 F.3d at 141. Here, Mr. Collymore's Complaint contained sufficient allegations to support the inference that Warden Martin became aware of both Mr. Collymore's serious medical need and the inadequacy of the medical care he received. Read in the light most favorable to Mr. Collymore, these allegations were sufficient to survive even a motion to dismiss, let alone the District Court's *sua sponte* dismissal.

First, Mr. Collymore alleged that he wrote to Warden Martin on March 20, 2020, explaining that his scalp condition had deteriorated, and that the infection had spread to his face. Exhibits to Compl. 16. Mr. Collymore additionally alleged that he spoke with the Warden on July 8, 2020, "apprising him of Plaintiff's degenerat[ing] condition." Compl. 16. Finally, Mr. Collymore alleged that he spoke to the Warden on November 23, 2020, more than eight months after originally apprising the Warden of his serious medical need. *Id.* at 19. During this

conversation, Mr. Collymore complained about the mishandling of his medical grievances. *Id.* Together, these allegations support the inference that Warden Martin was aware of the fact that Mr. Collymore was not receiving appropriate medical treatment for a serious medical need.

Because Mr. Collymore was *pro se* before the District Court, the Court should have construed these allegations "'to raise the strongest claims that [they] suggest[ed].'" *Dotson v. Fischer*, 613 F. App'x 35, 38 (2d Cir. 2015) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). Viewed properly, Mr. Collymore's allegations support a claim against Warden Martin for deliberate indifference to Mr. Collymore's serious medical needs. Nevertheless, the District Court dismissed the claims against Warden Martin because the Warden "acted in response to [Mr. Collymore's March 20 letter] because he informed [Mr.] Collymore that non-emergency medical visits were suspended due to the covid-19 pandemic." First Dismissal 15.

The District Court additionally determined that "[t]he fact that the warden was unable to give [Mr.] Collymore the relief he sought in March 2020 and later in July 2020, does not establish a claim for supervisory liability." First Dismissal 15. In so holding, the Court overlooked Mr. Collymore's allegation that he again contacted the Warden about his medical grievances on November 23, 2020, ***more than eight months*** after he originally notified the Warden about his serious

medical need.  Taken in the light most favorable to Mr. Collymore, these allegations do more than suggest that the Warden was "unable" to give Mr. Collymore what he requested.  Rather, these allegations suggest that the Warden was aware of the insufficiency of Mr. Collymore's medical care, as well as the serious nature of his condition, and nevertheless chose not to take any action.  At minimum, these allegations raised a question of fact concerning Warden Martin's personal involvement in the violation of Mr. Collymore's Eighth Amendment rights.  *See Grullon*, 720 F.3d at 141 (plaintiff should have been permitted to file an amended complaint alleging that he sent Warden a letter apprising him of prison conditions because such allegations supported inference that Warden became of aware of the challenged conditions);  *Braxton/Obed-Edom v. City of N.Y.*, No. 1:17-cv-00199, 2018 WL 11316020, at *6 (S.D.N.Y. Dec. 20, 2018) (determining that dismissal was inappropriate because "there [we]re questions of fact as to what actions [prison officials] took in response to [plaintiff's] letters and whether those actions were reasonable"), *report and recommendation adopted in* 368 F. Supp. 3d 729 (S.D.N.Y. 2019); *c.f. Lewal v. Tippy*, 133 F.3d 907 (2d Cir. 1998) (table) (concluding that the warden was not deliberately indifferent for failure to allow prisoner to be examined by an independent neurologist, but noting that the plaintiff might be able to allege a claim because warden was aware of outside doctor's opinion "that the treatment [prisoner] [wa]s receiving [wa]s inadequate").

Accordingly, the District Court should not have dismissed Mr. Collymore's

colorable claim against Warden Martin. *McFadden*, 827 F. App'x at 26.

> **2.    Mr. Collymore alleged that Warden Chapdelain knew of
> and disregarded an excessive risk to Mr. Collymore's health
> and safety**

Mr. Collymore similarly alleged that Warden Chapdelain knew of and

disregarded an excessive risk to Mr. Collymore's health.  Mr. Collymore's

Complaint alleged that over the course of five years, Mr. Collymore repeatedly

wrote to, and spoke with, Warden Chapdelain about his medical condition and

need for adequate medical care.  Compl. 14-15.  These allegations are sufficient to

support Mr. Collymore's claim that Warden Chapdelain had subjective knowledge

of a substantial risk of serious harm to Mr. Collymore and disregarded it.  *Tangreti*,

983 F.3d at 618.

Despite these allegations, the District Court dismissed the claims against

Warden Chapdelain because Mr. Collymore was being seen by medical staff while

confined at MacDougall, and "[p]rison administrators are entitled to defer to the

opinions of medical providers."  First Dismissal 14.  The District Court

additionally noted that Mr. Collymore did not allege facts "regarding the content of

the letters of [sic] conversations" with the Warden.  *Id.*

As explained above, the District Court should have interpreted Mr.

Collymore's *pro se* complaint as raising "the strongest claims that it suggests."

*Dotson*, 613 F. App'x at 38.  Here, the fact that Mr. Collymore alleged that he complained to the Warden about the insufficiency of his medical care *for five years* suggests both that the Warden was aware of Mr. Collymore was receiving inadequate medical care and that he did not act to remedy this constitutional violation.  Because Mr. Collymore raised a colorable claim against Warden Chapdelain, it was error for the court to dismiss his claim *sua sponte*.  *McFadden*, 827 F. App'x at 26.

> **3.    Mr. Collymore alleged that Commissioner Cook knew of and disregarded an excessive risk to Mr. Collymore's health and safety**

With respect to Commissioner Cook, Mr. Collymore alleged that he "wrote the Defendant Commissioner of D.O.C. informing him of [Mr. Collymore's] scalp condition and dire need of help."  Compl. 17.  Mr. Collymore attached a copy of this letter as an exhibit.  Exhibits to Compl. at 10.  Even a cursory review of Mr. Collymore's letter confirms that he notified Commissioner Cook about the nature of his serious medical need and that he was receiving inadequate medical care.  *Id.* at 10, 11 (stating that he was suffering from a "[d]isease that ha[d] taken over [his] scalp" that was "now spreading to [his] face" and had been "told numerous times by medical person[n]el, that [he'd] see an outside physician, but that hasn't manifested" and that, as a result, "[his] condition persists, and has gotten worst [sic]").  Without the benefit of an Answer from Commissioner Cook, there "are

questions of fact as to what actions [he] took in response to [Mr. Collymore's] letter[] and whether those actions were reasonable." *Braxton/Obed-Edom*, 2018 WL 11316020, at *8. The District Court therefore should have allowed this claim to continue at least until Commissioner Cook had answered the complaint. *McFadden*, 827 F. App'x at 26.

### 4. Mr. Collymore alleged that HSA Lightner knew of and disregarded an excessive risk to Mr. Collymore's health and safety

Mr. Collymore also raised colorable claims against HSA Lightner. In his Complaint, Mr. Collymore alleged that he wrote to HSA Lightner in August 2017 and April 2019 to state that he was not receiving adequate medical care. Compl. 10-11, 12. The District Court dismissed Mr. Collymore's claims against HSA Lightner, concluding that "[i]n response to his letters to Lightner, Collymore was seen by medical staff. Thus, she was not deliberately indifferen[t] to his medical needs." First Dismissal 12.

But nothing in the record suggests that Mr. Collymore was seen by medical staff *as a result* of his letters to HSA Lightner. Indeed, Mr. Collymore's Amended Complaint asserts that he was not seen by a doctor as a result of his April 22, 2019, letter to HSA Lightner. Amend. Compl. 7 (stating that he was not seen by medical "in response to plaintiff's 4-22-19 request"); Compl. 10 (stating that Mr. Collymore wrote to HSA Lightner on April 22, 2019). Accordingly, the District

Court failed to "draw all reasonable inferences in the plaintiff's favor." *Anderson*, 317 F.3d at 197.

At minimum, Mr. Collymore's Complaint raised a question of fact concerning "what actions" HSA Lightner "took in response to [Mr. Collymore's] letters and whether those actions were reasonable." *Braxton/Obed-Edom*, 2018 WL 11316020, at *8. Accordingly, the District Court should have allowed this claim to continue at least until HSA Lightner had answered the complaint. *McFadden*, 827 F. App'x at 26.

### B. Mr. Collymore Should Have Been Instructed To File An Amended Complaint Against All The Original Named Defendants

In dismissing Mr. Collymore's Complaint, the District Court noted that he could file "an amended complaint against Drs. Doe 2 and Doe 3." First Dismissal 18. This instruction improperly limited Mr. Collymore's ability to file an Amended Complaint against the other named defendants. As a *pro se* plaintiff, Mr. Collymore's Complaint should not have been dismissed without the District Court granting leave to amend the claims against all defendants against whom a valid claim might have been stated. *See Grullon*, 720 F.3d at 139 ("A *pro se* complaint 'should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (brackets in original)); *see also Kerr v. Cook*, No. 3:21-cv-93, 2021 WL 765023, at *4 (D. Conn. Feb. 26, 2021) (plaintiff could file

an amended complaint to reassert his claims against six defendants if he could "allege facts which adequately allege[d] their personal involvement in the alleged constitutional deprivations").

Under a liberal reading, Mr. Collymore's Complaint shows that a valid claim might be stated against all named defendants. As explained above in Section IV(A), Mr. Collymore's Complaint raised at least a colorable claim against Warden Martin, Warden Chapdelain, Commissioner Cook, and HSA Lightner. To the extent that the District Court found Mr. Collymore's factual allegations lacking, the court should have instructed Mr. Collymore to file an amended complaint against these defendants to remedy any deficiency. *See, e.g.*, *Braxton/Obed-Edom*, 2018 WL 11316020, at *8 (recommending that *pro se* plaintiff be given a second opportunity to amend because "it is not yet apparent that another opportunity to amend would be futile"). At minimum, Mr. Collymore should have been permitted to amend his Complaint to allege further details concerning the content and timing of his communications with Warden Martin, Warden Chapdelain, Commissioner Cook, and HSA Lightner. *See Grullon*, 720 F.3d at 141 (*pro se* plaintiff should have been permitted to file an amended complaint alleging that he sent Warden a letter apprising him of prison conditions because such allegations supported inference that Warden became aware of the challenged conditions).

Moreover, a liberal reading of Mr. Collymore's Complaint suggests that a valid claim could be stated against Nurse Brennan. The District Court dismissed Mr. Collymore's claims against Nurse Brennan because "[i]nmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed." First Dismissal 15. However, Mr. Collymore's Complaint supports an inference that Nurse Brennan displayed deliberate indifference because "after being informed of the [Eighth Amendment] violation through grievances," she "failed to remedy the wrong." *Jusino v. Gallagher*, No. 3:21-cv-689, 2021 WL 3726010, at *2 (D. Conn. Aug. 23, 2021). Such allegations could be sufficient at the motion to dismiss stage. *Id.* at *5. Accordingly, the District Court should have permitted Mr. Collymore to amend his claim against Nurse Brennan to focus on her failure to remedy the Eighth Amendment violation despite subjective knowledge of Mr. Collymore's receipt of inadequate medical care.

## III.   MR. COLLYMORE SUFFICIENTLY ALLEGED THAT HE SUFFERED FROM A CLEARLY ESTABLISHED SERIOUS MEDICAL NEED

Qualified immunity shields government officials from civil liability only when their conduct does not violate a clearly established statutory or constitutional right, or it was objectively reasonable for the officials to believe their actions did not violate such law. *See Anderson*, 317 F.3d at 197. "Defendants advancing a qualified-immunity defense at the motion to dismiss stage 'face[] a formidable

hurdle.'" *Neary v. Wu*, 753 F. App'x 82, 84 (2d Cir. 2019) (quoting *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004)). "On such a motion, 'the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, ***but also those that defeat the immunity defense***.'" *Id.* [6]

At the motion to dismiss stage, a district court must determine whether the plaintiff has pled facts showing that (1) the official violated a statutory or constitutional right that was (2) clearly established at the time of the challenged conduct. *Neary*, 753 F. App'x at 84. A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful. *Anderson*, 317 F.3d at 197.

Here, the District Court addressed only the second prong of this test, determining that it was not clearly established that Mr. Collymore's scalp condition was a serious medical need because "[t]here are no United States Supreme Court or [S]econd [C]ircuit cases holding that a scalp condition causing painful open sores is a serious medical need." Second Dismissal 10. The District Court ignored Second Circuit case law clearly establishing that analogous medical conditions constitute serious medical needs. Under *Brock v. Wright*, Mr.

---

[6]    All emphasis added unless otherwise indicated.

Collymore sufficiently alleged a clearly established serious medical need because he alleged that he suffered from chronic pain. 315 F.3d 158, 163 (2d Cir. 2003). Further, even under the narrowest permissible interpretation of *Brock,* Mr. Collymore sufficiently alleged that he suffered from a clearly established serious medical need because he alleged that his condition warranted comment, interfered with his daily living, and caused chronic pain. *Id.* Finally, the District Court should have found that Mr. Collymore alleged a clearly established serious medical need even assuming it were permissible (it is not) to limit *Brock* to the specific medical condition at issue there (keloids)*.* The District Court's dismissal should therefore be reversed, and this case remanded for further proceedings.

### A.    Mr. Collymore's Allegations Were Sufficient *Solely* Based On The Defendants' Being On Notice Of His Suffering And Chronic Pain

Mr. Collymore's Complaint and Amended Complaint consistently characterized his scalp condition as causing significant, chronic pain. *See, e.g.,* Amended Complaint 7, 13, 15 (alleging "pain and suffering"); *id.* at 7, 13 (describing condition as intolerable); Compl. 19 (discussing prescribed pain killers). That is all that was required. While the District Court acknowledged that Mr. Collymore's scalp condition was painful, its decision overlooked the extent of this pain, as well as the extensive Second Circuit case law clearly establishing that chronic pain is a serious medical need.

## 1. It is clearly established that the Eighth Amendment forbids deprivations of medical care that perpetuate chronic pain

There can be no doubt that conditions causing chronic pain are clearly established serious medical needs. In 2003, this Court explained that it would no more "tolerate prison officials' deliberate indifference to the chronic pain of an inmate than [it] would a sentence that required the inmate to submit to such pain." *Brock*, 315 F.3d at 163. Following *Brock*, this Court has repeatedly emphasized that "it was *clearly established* 'that the Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which *cause or perpetuate pain*." *Rodriguez v. Manenti*, 606 F. App'x 25, 27 (2d Cir. 2015) (emphasis added) (quoting *Brock*, 315 F.3d at 163); *see also Neary*, 753 F. App'x at 84. The District Court ignored this clear admonition in determining that it was not clearly established that Mr. Collymore's condition, which he alleged was "intolerable" and caused "pain and suffering," was a serious medical need. Compl. 16; Amend. Compl. 13-14.

In *Brock*, the plaintiff suffered a deep laceration to his check. 315 F.3d at 160. While the plaintiff received adequate medical care for the wound itself, he eventually developed "a painful and disfiguring keloid" at the site of the wound. *Id.* As relevant here, Mr. Brock experienced "a throbbing, burning pain" as a result of the keloid. *Id.* at 161. Moreover, Mr. Brock submitted an affidavit asserting that he could not "smile, yawn, brush his teeth, chew food on the right

side of his mouth or sleep on his right side without experiencing pain." *Id.*
Nevertheless, Mr. Brock was denied referral to a dermatologist on the grounds that
the requested consultation was "cosmetic." *Id.*

The plaintiff brought suit, alleging that various employees of the New York
Department of Corrections "wrongfully, and in violation of the Eighth
Amendment, prevented him from obtaining the care of a dermatologist." 315 F.3d
at 161. The District Court granted summary judgment for the defendants, holding
that Mr. Brock's "scar was not a serious medical condition." *Id.* at 163. This
Court disagreed, concluding that the defendants were "not entitled to summary
judgment on the ground that Brock's medical needs were insufficiently serious"
because Mr. Brock offered "proof of *chronic* pain the magnitude of which
probably falls somewhere between 'annoying' and 'extreme.'" *Id.* at 162-163
(emphasis in original).

This Court's post-*Brock* case law confirms that conditions producing chronic
pain are clearly established serious medical needs. For example, in *Neary*, this
Court found that there was "no doubt" that the Defendants-Appellants were not
entitled to qualified immunity at the motion to dismiss stage because the plaintiff
alleged "that he suffered chronic pain due to gynecomastia." 753 F. App'x at 84.
In so holding, the Court emphasized that it had "previously held that a prisoner-
plaintiff establishes a serious medical need where she suffered chronic pain the

magnitude of which probably falls somewhere between annoying and extreme."
*Id.* (quoting *Brock*, 315 F.3d at 163) (internal quotation marks omitted).

Similarly, in *Rodriguez*, this Court affirmed denial of summary judgment on qualified immunity grounds where the plaintiff suffered chronic pain as a result of a knee injury. 606 F. App'x at 25. The defendant argued that "a reasonable official would not have realized that Plaintiff's knee injury constituted a serious medical need because district courts in this Circuit have found that the denial or delay of treatment for allegedly similar knee injuries did not violate (or clearly violate) an inmate's Eighth Amendment rights." *Id.* at 26.

This Court rejected the defendant's argument, noting that "this Court does not analyze Eighth Amendment claims for the deprivation of medical care according to body parts." *Id.* This Court concluded that "Defendant was aware that Plaintiff's knee injury caused him chronic pain and that intermittent knee locking led to a periodic inability to walk." *Id.* Moreover, this Court explained that "[a]t the time of the alleged violation, it was clearly established that 'that the Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain.'" *Id.*

District courts, including the District of Connecticut, have similarly recognized that chronic pain is a clearly established serious medical need under

*Brock* and its progeny. For example, the District of Connecticut determined that a plaintiff who had been prescribed pain medication for a shoulder injury had sufficiently alleged a serious medical need at the motion to dismiss stage because "[a] prisoner-plaintiff can establish a serious medical need if he suffers 'chronic pain.'" *Robbs v. McCrystal*, No. 3:18-cv-2150, 2019 WL 4933495, at *3 (D. Conn. Oct. 7, 2019); *see also Osorio-Pizarro v. Burdo*, No. 9:16-cv-156, 2019 WL 1010420, at *3 n.2 (N.D.N.Y. Mar. 4, 2019) (concluding that plaintiff sufficiently alleged a serious medical need by alleging that he suffered a knee injury causing "extreme pain").

Here, Mr. Collymore's scalp condition began in 2015, Compl. 9, the very year that *Rodriguez* confirmed that chronic pain was a clearly established serious medical need, 606 F. App'x at 25. Accordingly, it is beyond doubt that the Defendants-Appellees were on notice that Mr. Collymore's chronic pain constituted a clearly established medical need. Nevertheless, the District Court did not address *Brock* and its progeny, or even its own case law recognizing that chronic pain is a clearly established serious medical need. This was reversible error.

**2. Mr. Collymore sufficiently alleged that he suffered chronic pain as a result of the Defendants-Appellees' failure to adequately treat his scalp condition**

Mr. Collymore's Complaint and Amended Complaint are replete with factual allegations supporting the inference that he suffered from chronic pain. Compl. 16; Amend. Compl. 7, 13-14. The District Court should have credited Mr. Collymore's allegations and determined that he sufficiently alleged that he suffered from a clearly established serious medical need at the motion to dismiss stage. This is particularly so because Mr. Collymore was "entitled to all reasonable inferences … that defeat the immunity defense." *Neary*, 753 F. App'x at 84.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Here, Mr. Collymore plausibly alleged that he suffered persistent and significant pain on par with the pain alleged in *Brock*. As in *Brock,* Mr. Collymore alleged that he suffered from a burning pain. *Compare Brock*, 315 F.3d at 161 ("throbbing, burning pain") *with* Amend. Compl. 13 ("scalp was 'on fire'"). Moreover, as in *Brock*, Mr. Collymore's chronic pain interfered with his ability to

sleep.  *Compare Brock*, 315 F.3d at 161 ("Brock cannot … sleep on his right side

without experiencing pain") *with* Amend. Compl. 6 ("The condition is very painful

and causes [Mr. Collymore] to lose sleep due to pain [and] irritation.").

Finally, Mr. Collymore described his condition as "intolerable."  Compl. 11,

16; *see also* Amend. Compl. 13.[7]  This undoubtedly qualifies as pain "between

'annoying' and 'extreme.'"  *Brock*, 315 F.3d at 163.  Accordingly, Mr. Collymore

sufficiently alleged denial of a clearly established serious medical need.

Moreover, Mr. Collymore presented further factual allegations that have by

themselves been found sufficient to support an allegation that a prisoner suffered

from chronic pain.  For example, Mr. Collymore alleged that he was prescribed

pain killers.  Compl. 19 (Mr. Collymore prescribed pain killers).  Such allegations

have previously been found sufficient for purposes of "initial review."  *Robbs*,

2019 WL 4933495, at *3.

The District Court acknowledged that Mr. Collymore's condition caused

pain, describing it as a "scalp condition causing painful open sores."  Second

Dismissal 10.  Nevertheless, the District Court dismissed Mr. Collymore's

---

[7]    As explained in Section III(C)(1) below, because Mr. Collymore was *pro se*
before the District Court, the court should have read the allegations of his
Complaint into his Amended Complaint.  *See Austin v. Ford Models, Inc.*, 149
F.3d 148 (2d Cir. 1998) (declining to extend rule in which amended complaint
supersedes an earlier complaint to *pro se* parties), *abrogated on other grounds by
Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Amended Complaint because there were "no United States Supreme Court or [S]econd [C]ircuit cases holding that a scalp condition causing painful open sores is a serious medical need." *Id.* However, as explained above, under *Brock* and its progeny, at the time Mr. Collymore was seen by the Defendants-Appellees, chronic pain was a clearly established serious medical need. Accordingly, the District Court should have denied Defendants-Appellees' motion to dismiss based on Mr. Collymore's allegations of significant, chronic pain. Instead, the District Court improperly focused on case law addressing minor skin conditions that are factually distinguishable from Mr. Collymore's "intolerable" condition.

### 3. The District Court's contrary conclusion relied on inapposite case law concerning minor skin conditions

Relying on factually inapposite cases, the District Court concluded that "district courts within the Second Circuit considering similar conditions have held that the conditions are not a serious medical need." Second Dismissal 10. The non-precedential cases on which the District Court relied did not involve plaintiffs who alleged that they suffered from significant chronic pain. *See El-Massri v. New Haven Corr. Ctr.*, No. 3:18-cv-1249, 2019 WL 6606457, at *7 (D. Conn. Dec. 5, 2019) (noting that Plaintiff did not "allege that he was debilitated or that he suffers daily excruciating pain"); *Reid v. Nassau Cty. Sheriff's Dep't*, No. 13-CV-1192, 2014 WL 4185195, at *20 (E.D.N.Y. Aug. 20, 2014) (plaintiff alleged he had "a rash on the bottom of my left foot"); *Samuels v. Jackson*, No. 97-CV-2420,

1999 WL 92617, at *1-3 (S.D.N.Y. Feb. 22, 1999) (noting that "plaintiff does not allege that his condition affected his daily activities … or that he experienced 'chronic and substantial pain'").  By contrast, as explained above, Mr. Collymore alleged that did suffer chronic and substantial pain.  Compl. 11, 13, 16; Amend. Compl. 6, 10.

Because Mr. Collymore sufficiently alleged that he suffered from chronic pain, a clearly established medical need under *Brock* and its progeny, the District Court's dismissal should be reversed, and this case remanded for further proceedings.

### B.     Mr. Collymore Sufficiently Alleged That His Condition Warranted Referral To A Doctor, Interfered With Daily Activities, And Caused Chronic Pain.

Mr. Collymore's allegation that he suffered from chronic pain as a result of his scalp condition was sufficient to survive a motion to dismiss.  However, even under the narrowest possible interpretation of *Brock,* Mr. Collymore sufficiently alleged that he suffered from a clearly established serious medical need.  As here, *Brock* involved a plaintiff who suffered from a serious, painful skin condition that interfered with his daily living.  315 F.3d at 160.  Further, as in *Brock*, several medical professionals recognized that Mr. Collymore's condition warranted referral to a doctor.  This Court's precedents make clear that these allegations

sufficiently support Mr. Collymore's claim that he suffered from a clearly

established serious medical need.

      **1.**     **It is clearly established that a skin condition that is worthy of comment, causes chronic pain, and interferes with daily activities is a serious medical need.**

In *Brock,* the Court reaffirmed the use of the *Chance* factors, a non-

exhaustive list of factors for determining the seriousness of a prisoner's medical

condition: "(1) whether a reasonable doctor or patient would perceive the medical

need in question as 'important and worthy of comment or treatment,' (2) whether

the medical condition significantly affects daily activities, and (3) 'the existence of

chronic and substantial pain.'" *Brock*, 315 F.3d at 162 (quoting *Chance v.*

*Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998)).

This test was applied in *Brock* to evaluate the seriousness of Mr. Brock's

keloids scarring. 315 F.3d at 162. The court first concluded that Mr. Brock's

condition was "worthy of comment" because a doctor "referred Brock to an

outside dermatologist." *Id*. at 163. Second, the court determined that Mr. Brock

sufficiently alleged that his condition interfered with his daily activities because an

affidavit asserted that the keloids affected his ability to "smile, yawn, brush his

teeth, chew food on the right side of his mouth or sleep on his right side without

experiencing pain." *Id.* at 161. Finally, the Court concluded that Mr. Brock

alleged chronic pain "the magnitude of which probably falls somewhere between

'annoying' and 'extreme.'" *Id.* at 163. *Brock* thus clearly established that a skin condition (like keloid scarring) is a serious medical need if it (1) is worthy of comment, (2) affects daily activities, and (3) causes chronic pain.

Courts in this Circuit apply the *Chance* factors to evaluate the seriousness of a medical need regardless of which body part is affected. *See, e.g.*, *Shenk v. Cattaraugus Cty.*, 305 F. App'x 751 (2d Cir. 2009) ("We have never held that mental anxiety is a serious medical need, but the condition appears to satisfy at least two of the *Chance* factors, anxiety being a condition that a doctor would find important, and which can affect one's daily activities."); *Mills v. Fenger*, 216 F. App'x 7, 10 (2d Cir. 2006) (applying *Chance* to determine that the Court could not "conclude as a matter of law that a ruptured patellar tendon is not a 'serious medical condition'"). The District Court should accordingly have determined that Mr. Brock sufficiently alleged that he suffered from a clearly established serious medical need because his scalp condition met all three prongs of the *Chance* test.

> **2.    Mr. Collymore sufficiently alleged that he suffered from a medical condition that was worthy of comment, interfered with his daily activities, and caused chronic pain.**

The allegations in Mr. Brock's Amended Complaint, like the similar allegations at issue in *Brock*, sufficiently support the inference that Mr. Collymore's condition met all three prongs of the *Chance* test. Mr. Collymore

therefore sufficiently alleged that he suffered from a clearly established serious medical need.

First, Mr. Collymore sufficiently alleged that medical providers found that his condition was worthy of comment and treatment. For over four years, Mr. Collymore was told that he would be referred to see a doctor or had been placed on a list to see a dermatologist. Amended Complaint at 12-13 (Mr. Collymore told "he'd be put at the top of the list for dermatology"); *id*. at 13 (Mr. Collymore told he would have an appointment with dermatology); *id.* at 14 (Mr. Collymore informed he was on a list to see dermatology); *id.* at 15 (Mr. Collymore told he was going to be added to a list to see a doctor). These allegations are nearly identical to the one found sufficient in *Brock.* 315 F.3d at 163 (concluding that Mr. Brock's condition was "worthy of comment" because a doctor "referred Brock to an outside dermatologist").

Second, Mr. Collymore sufficiently alleged that his scalp condition affected his daily activities because Mr. Collymore's Amended Complaint stated that his condition interfered with his ability to sleep. Amend. Compl. 6, 10; Compl. 13. "Courts in this Circuit have concluded that 'sleep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment.'" *Diaz v. Hanna*, No. 3:20-cv-1050, 2020 WL 6453936, at *5 (D. Conn. Nov. 3, 2020) (plaintiff that alleged that his medical condition caused him

pain and interfered with this sleep sufficiently established a serious medical need).

Moreover, this allegation is nearly identical to the one at issue in *Brock*.  315 F.3d

at 161 (noting that condition prevented Mr. Brock from sleeping on his left side

without pain).

Finally, as explained above in Section III(A)(2), Mr. Collymore sufficiently

alleged that his condition caused chronic pain.  At the motion to dismiss stage,

these allegations were sufficient to state a clearly established serious medical need.

This is particularly so given that Mr. Collymore was *pro se* before the District

Court and was therefore entitled to "'special solicitude,'" with his complaint

interpreted "to raise the strongest claims that it suggests."  *Dotson*, 613 F. App'x at

38.

The District Court ignored *Brock, Chance,* and its own case law finding

similar allegations sufficient.  *See, e.g.*, *Sherman v. Cook*, No. 3:20-cv-1485, 2021

WL 311283, at *5 (D. Conn. Jan. 29, 2021) ("Here, [plaintiff] states that he suffers

from shoulder and back conditions that cause him severe, chronic pain, limit his

movement on a daily basis, and prevent him from being able to sleep.  For

purposes of initial review those allegations establish that Sherman's condition is

sufficiently serious").  Accordingly, the District Court's decision should be

reversed.

### C. Mr. Collymore Sufficiently Alleged That He Suffered From Keloids

In holding that Mr. Collymore did not allege that he suffered from a clearly established serious medical need, the District Court also overlooked the specific allegation in Mr. Collymore's Complaint that his scalp condition resulted in keloid scarring. Because *Brock* specifically addressed keloid scarring of the head, the District Court should have found that Mr. Collymore alleged a clearly established serious medical need even assuming it were permissible (it is not) to limit *Brock* to the specific medical condition at issue there.

#### 1. It is clearly established that failure to adequately treat painful keloid scarring violates the Eighth Amendment

Mr. Collymore's Complaint alleged that his untreated scalp condition resulted in keloid scarring. Compl. 20. As a *pro se* plaintiff, the District Court should have read the allegations from Mr. Collymore's Complaint into his Amended Complaint such that Mr. Collymore was deemed to have alleged that he suffered from keloids. *See, e.g.*, *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155-156 (2d Cir. 1998) (declining to extend rule in which amended complaint supersedes an earlier complaint to *pro se* parties), *abrogated on other grounds* *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Elliott v. City of Hartford*, 649 F. App'x 31, 32 (2d Cir. 2016) (mem.) (recognizing *Austin* as declining to extend this rule to *pro se* plaintiffs); *McFadden v. Annucci*, No. 18-cv-6684, 2021 WL

4942064, at *10 (W.D.N.Y. Oct. 22, 2021) (declining to find claim omitted in

second amended complaint abandoned when *pro se* party did not intend to abandon

claim, but merely believed "the claims need not be replead"); *Richards v. City of

N.Y.*, No. 1:19-cv-10697, 2021 WL 4443599, at *3 n.2 (S.D.N.Y. Sept. 28, 2021)

(considering *pro se* plaintiff's "Complaint and Amended Complaint together").

Because *Brock* squarely addressed keloid scarring of the head, the District

Court should have held that Defendants-Appellees were on notice that Mr.

Collymore's scalp condition constituted a serious medical need. Moreover, *Brock*

is consistent with this Court's earlier case law addressing keloids as a serious

medical need. *See also Smith v. Greifinger*, No. 99-0042, 2000 WL 288362, at *3

(2d Cir. Mar. 17, 2000) (unpublished) (affirming denial of summary judgment for

defendants because there were genuine issues of material fact as to whether

defendants acted in an objectively reasonable manner in refusing to treat the

plaintiff's keloid scars). In *Smith*, as here, the plaintiff alleged that "he

experienced pain over an extended period of time and had difficulty sleeping." *Id.*

This Court determined that these allegations, when taken as true, "at the very least,

created fact questions as to whether his medical condition was serious and whether

the requested treatment was reasonably necessary." *Id.* Of course, *Brock*

confirmed that such a medical condition is a serious medical need. 315 F.3d at

163.

Mr. Collymore's allegations mirror those at issue in both *Smith* and *Brock.*

At minimum, Mr. Collymore's allegations should have been taken as raising a

claim to deliberate indifference based on keloid scarring, an indisputable clearly

established serious medical need. The District Court's decision should accordingly

be reversed, and this case remanded for further proceedings.

### 2. At minimum, this case should be remanded to allow Mr. Collymore to file a Second Amended Complaint alleging that he suffered from keloid scarring

In the event this Court declines to read the allegations in Mr. Collymore's

Complaint into his Amended Complaint, Mr. Collymore's case should be

remanded to allow him to file a Second Amended Complaint to re-allege that he

suffered from keloids. A district court should not dismiss a *pro se* complaint

without granting the plaintiff leave to amend if "a liberal reading of the complaint

gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav.*

*Bank*, 171 F.3d 794, 795-796 (2d Cir. 1999) (quoting *Branum v. Clark*, 927 F.2d

698, 705 (2d Cir. 1991)); *see also Grullon*, 720 F.3d at 139 ("A *pro se* complaint

'should not [be] dismiss[ed] without [the Court's] granting leave to amend at least

once when a liberal reading of the complaint gives any indication that a valid claim

might be stated." (brackets in original)). Here, while Mr. Collymore has

previously amended his Complaint, he has not done so with the benefit of this

Court's reasoning. Accordingly, he should be permitted to file a Second Amended

Complaint because a liberal reading of Mr. Collymore's Amended Complaint at least indicates that Mr. Collymore could allege a valid claim under *Brock*. *See, e.g.*, *Braxton*, 2018 WL 11316020, at *13 (recommending that *pro se* plaintiff be given a second opportunity to amend because "'it is not yet apparent that another opportunity to amend would be futile'").

## IV. THE DISTRICT COURT IMPROPERLY IGNORED MR. COLLYMORE'S REQUEST FOR INJUNCTIVE RELIEF

The District Court dismissed all claims in Mr. Collymore's Amended Complaint on qualified immunity grounds. Second Dismissal 11. In so doing, the District Court ignored Mr. Collymore's request for injunctive relief. *Id.*; Amend. Compl. 6 (requesting "an order, ordering the defendants to provide for adequate medical care for plaintiff"). This was error.

As this Court has explained, "[q]ualified immunity does not bar actions for declaratory or injunctive relief." *Sudler v. City of New York*, 689 F.3d 159, 177 (2d Cir. 2012); *see also Shannon v. Venettozzi*, 670 F. App'x 29, 31 (2d Cir. 2016) ("[W]e observe that even if the district court determines that the defendants are entitled [to] qualified immunity, that immunity would not preclude [plaintiff's] claims for injunctive relief."). While Mr. Collymore has seen a dermatologist, his condition persists and there is a need for injunctive relief. Accordingly, the District Court should not have closed the case, and should have permitted Mr. Collymore's claims for injunctive relief to proceed.

## CONCLUSION

This Court should reverse the District Court's dismissal of Mr. Collymore's Amended Complaint and claims against Warden Martin, Warden Chapdelain, Commissioner Cook, and HSA Lightner and remand to the District Court for additional proceedings. This Court should additionally instruct the District Court to allow Mr. Collymore to file a Second Amended Complaint naming Nurse Brennan.

Respectfully submitted.

/s/ Omar A. Khan
OMAR A. KHAN
LAUREN E. MATLOCK-COLANGELO
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center,
250 Greenwich Street
New York, NY 10007
(212) 230-8800

June 21, 2022

# District Court's April 2, 2021 Ruling and Order

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
                                 :
ANTHONY T. COLLYMORE,            :
   plaintiff,                    :
                                 :
     v.                          :  CASE NO. 3:21-cv-303 (AVC)
                                 :
COMMISSIONER OF CORRECTION,      :
ET AL.,                          :
   defendants.                   :
                                 :
```

**RULING AND ORDER**

The plaintiff, Anthony T. Collymore, files this case <u>pro
se</u>, pursuant to 42 U.S.C. § 1983.  He names eight defendants,
commissioner of correction Rollin Cook, warden Chapdelain at
MacDougall Correctional Institution ("MacDougall"), warden
Robert Martin at Corrigan Correctional Institution, health
services administrator Lightner, nurse and health services
review coordinator Janine Brennan, and three "John Doe" doctors
who treated Collymore at MacDougall.  Collymore alleges that the
defendants were deliberately indifferent to his medical needs.
Collymore seeks damages as well as injunctive and declaratory
relief.

**FACTS**

The complaint states the following facts.

Collymore has been seeking treatment for a scalp condition
since 2015.  The condition causes itchy, burning bumps that

**A2**

bleed or exude pus.  The condition is painful and covers much of his scalp.  Collymore has been requesting examination by a dermatologist for proper diagnosis and treatment for five years. He has been told he is on a waiting list.

In July 2017, Collymore wrote to the medical unit at MacDougall, seeking diagnosis and treatment for his scalp condition.  A nurse saw him at sick call and referred him to a doctor.  Collymore saw Dr. Doe 1 on August 23, 2017.  Dr. Doe 1 did not know what the condition was, but prescribed a shampoo, a steroid, and a cream.  None of the medications cured his condition.

In 2017 and again on April 22, 2019, Collymore wrote to the defendant, Lightner.  In 2019, he stated that his scalp condition had worsened, the infection persisted, and, although he had been seen by several medical providers, no one had diagnosed or properly treated his on-going condition.  He asked for an outside referral and threatened legal action.

Collymore saw Dr. Doe 2 on May 14, 2019.  He could not provide a diagnosis but prescribed a medication.  The treatment did not work.  After again writing to the medical unit, Collymore was seen by a nurse on September 16, 2019.  He was seen by a different provider in October 2019.  Neither visit

2

**A3**

afforded him any relief.  His condition persisted and worsened.

On December 8, 2019, Collymore sought assistance from the block officer to obtain medical treatment.  After Collymore described his pain and discomfort, the block officer called the medical unit and was advised to have the nurse who already was in the housing unit examine Collymore.  When the nurse refused, Collymore was instructed to go to the medical unit.  A nurse examined his scalp, noted the open raw sores and said Collymore needed to see a doctor.  Dr. Doe 3 determined that Collymore's scalp was infected and prescribed antibiotics.  When questioned, Dr. Doe 3 could not identify the underlying condition.  She did not refer him to a dermatologist.

While Collymore was confined at MacDougall, from, 2014 to 2019, he wrote several letters to the warden and spoke to him, when he toured the housing unit, seeking medical care.  The warden took no action.

On December 12, 2019, Collymore was transferred from MacDougall to Corrigan Correctional Center ("Corrigan").  On December 16, 2019, Collymore was seen in the medical unit.  The doctor prescribed antibiotics and a shampoo and referred Collymore to a dermatologist.  The doctor instructed Collymore to take the antibiotics and use the shampoo, but said that he

had to wait his turn to see the dermatologist.  The antibiotics treated the sores, but they returned once the antibiotics ran out.

On January 13, 2020, a medical provider noted that Collymore's scalp had again become infected.  Collymore was given more antibiotics and told he would see a dermatologist. He has not yet been seen by a dermatologist.

On February 5, 2020, Collymore wrote to the medical unit stating that, after completing the antibiotics, his condition worsened.  On February 21, 2020, he reported a worsening condition with intolerable itching and asked to see a doctor and be fast-tracked to see a dermatologist.

On March 1, 2020, Collymore filed a medical grievance and asked to see a doctor.  Collymore wrote to the medical supervisor on March 18, 2020, and warden Martin on March 20, 2020, seeking treatment.  Although Collymore alleges that warden Martin ignored his request to see a dermatologist, he submits a March 2020 letter from warden Martin stating that non-emergency outside medical visits were suspended due to the covid-19 pandemic.

On July 8, 2020, Collymore spoke to warden Martin about his medical issues.  Collymore wrote to the medical unit on July 11,

**A5**

2020, and to the commissioner on July 13, 2020.  The commissioner took no action.  Collymore wrote to the medical unit again on July 26, 2020, before filing grievances on August 4, 2020 and October 15, 2020.  All medical grievances went to the defendant, health services review coordinator Brennan.

On November 10, 2020, Brennan returned one of the grievances without disposition.  When Collymore appealed this action to Brennan's supervisor, Brennan answered the appeal.  Collymore filed a second appeal and Brennan again responded.  When Collymore complained to warden Martin, he was told to write to the C.R.O.O.  Collymore did but has not received a response.  In December 2020, Collymore filed another grievance, which was accepted.

On January 8, 2021, Collymore went to the medical unit because his scalp was bleeding.  Although a doctor was present, he was seen by a nurse and prescribed a shampoo that was ineffective in the past.

The failure to properly treat his condition has resulted in scarring, keloids, and hair loss.

**STANDARD**

5

**A6**

Under section 1915A of title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  Id.  In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); see also

6

**A7**

Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010)

(discussing special rules of solicitude for pro se litigants).

**DISCUSSION**

Collymore contends that the defendants were deliberately indifferent to his serious medical need by failing to send him to a dermatologist when they were unable to diagnose his condition.

**I.   Deliberate Indifference to Medical Need**

The Eighth Amendment forbids deliberate indifference to prisoner's serious medical needs.  Spavone v. New York State Dep't of Corr. Servs., 719 F.3d 127, 138 (2d Cir. 2013).  To state such a claim, Collymore must allege facts showing both that his need was serious, and that the defendants acted with a sufficiently culpable state of mind.  See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

There are both objective and subjective components to the deliberate indifference standard.  Objectively, the alleged deprivation must be "sufficiently serious."  Spavone, 719 F.3d at 138.  This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."

Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006).  A
"sufficiently serious" deprivation can exist if the plaintiff
suffers from an urgent medical condition that is capable of
causing death, degeneration, or extreme or chronic pain.  See
Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003); Hathaway
v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

**(a) Objective Prong - Serious Medical Condition**

A medical condition may not initially be serious, but may
become serious because it is degenerative and, if left untreated
or neglected for a long period of time, will "result in further
significant injury or the unnecessary and wanton infliction of
pain."  Harrison v. Barkley, 219 F.3d 132, 136-37 (2d Cir.
2000).  The second circuit has identified several factors that
are "highly relevant" to the question of whether a medical
condition is sufficiently serious, including "an injury that a
reasonable doctor or patient would find important and worthy of
comment or treatment; the presence of a medical condition that
significantly affects an individual's daily activities; or the
existence of chronic and substantial pain."  Chance v.
Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

Collymore alleges that he has itchy, burning bumps on his
scalp that bleed or exude pus.  The condition is painful and

covers most of his scalp.  Research reveals no cases in this circuit considering whether this condition is a serious medical need.  However, a district court in Illinois has determined that "a rational juror could find that painful bumps on the scalp draining pus and blood is a serious medical need."  <u>Rankin v. Baker</u>, No. 16-CV-3138, 2018 WL 1189878, at *4 (C.D. Ill. Mar. 7, 2018), <u>aff'd</u>, 770 F. App'x 752 (7ᵗʰ Cir. 2019).  As Collymore alleges that the condition caused him serious pain, the court will assume, for purposes of initial review only, that Collymore has a serious medical need.

**(b) Subjective Prong**

The defendants also must have been "subjectively reckless." <u>Spavone</u>, 719 F.3d at 138.  They must have been actually aware of a substantial risk that Collymore would suffer serious harm as a result of their actions or inactions.  The defendants "need only be aware of the risk of harm, not intend harm.  And awareness may be proven 'from the very fact that the risk was obvious.'" <u>Id.</u> (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 842 (1994)).

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983.  <u>See</u> <u>Salahuddin</u>, 467 F.3d at 280 ("[R]ecklessness entails more than

9

**A10**

mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference. Farmer, 511 U.S. at 838.

Nor does a disagreement over the treatment provided show deliberate indifference. See Wright v. Rao, 622 F. App'x 46, 47 (2d Cir. 2015) (citing Chance, 143 F.3d at 703); Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment so long as he received adequate treatment ... [T]he essential test is one of medical necessity and not one simply of desirability." (internal quotation marks and citations omitted)).

Collymore alleges that he was treated once by Dr. Doe 2, presumably in response to his April 2019 request to the defendant, Lightner, and once by Dr. Doe 3. Dr. Doe 2 prescribed medication that did not work, and Dr. Doe 3 prescribed antibiotics to treat a scalp infection. Neither diagnosed the precise underlying condition or referred him to a dermatologist.

Both doctors provided treatment. Their failure to diagnose

10

**A11**

the cause of Collymore's scalp issues is not sufficient to
support a claim for deliberate indifference.  "[A] complaint
that a physician has been negligent in diagnosing or treating a
medical condition does not state a valid claim of medical
mistreatment under the Eighth Amendment."  Estelle, 429 U.S. at
106.  See also Gomez v. County of Westchester, 649 F. App'x 93,
96 (2d Cir. 2016) (Summary Order) (holding that failure to
diagnose infection at most supported inference of negligence,
not recklessness needed to support a claim for deliberate
indifference to a serious medical need); Salahuddin, 467 F.3d at
280 ("[R]ecklessness entails more than mere negligence; the risk
of harm must be substantial and the official's actions more than
merely negligent."); Beaman v. Unger, 838 F. Supp. 2d 108, 110
(W.D.N.Y. 2011) (misdiagnosis and failure to recognize the
severity of injuries "might conceivably show malpractice, but
they do not state an Eighth Amendment claim.").

In addition, Collymore alleges that each doctor treated him
only once.  This is not a situation in which a doctor saw an
inmate repeatedly for the same complaint, but tried nothing new.
See Hathaway v. Coughlin, 37 F.3d 63,68 (2d Cir. 1994)
(defendant doctor's frequent examinations of plaintiff did not
preclude a finding of deliberate indifference because the

11

**A12**

"course of treatment was largely ineffective, and [the doctor] declined to do anything more to improve [the plaintiff's] situation").

The court concludes that Collymore fails to allege facts showing more than negligence regarding his medical care. Accordingly, the claims against the defendants, Drs. Doe 2 and 3, are dismissed without prejudice.  Collymore may file an amended complaint asserting deliberate indifference claims against Drs. Doe 2 and Doe 3, if he can allege facts showing frequent examinations with ineffective treatment.

Collymore alleges that Lightner failed to send him to a dermatologist, in response to his requests.  He does not allege that Lightner is a medical provider who could order a dermatology consult.  In response to his letters to Lightner, Collymore was seen by medical staff.  Thus, she was not deliberately indifference to his medical needs.  The claims against Lightner are, therefore, dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## II.  **Statute of Limitations**

The limitations period to file a section 1983 action in Connecticut is three years.  Thompson v. Rovella, 734 F. App'x 787, 788-89 (2d Cir. 2018); see also Lounsbury v. Jeffries, 25

**A13**

F.3d 131, 134 (2d Cir. 1994) (analyzing available state
limitations periods and determining that appropriate limitations
period for section 1983 actions filed in Connecticut is three
years).

Collymore alleges that Dr. Doe 1 treated him only once in
August 2017.  As this was more than three years before Collymore
filed this action, his claim against dr. Doe 1 is dismissed as
time-barred.

## III. __Supervisory Liability__

Commissioner Cook, warden Chapdelain, and warden Martin are
supervisory officials.  The second circuit has recently
clarified the standard to be applied to a claim of supervisory
liability.  See Tangreti v. Bachman, 983 F.3d 609 (2d Cir.
2020).  The court adopted the Supreme Court's reasoning in
Ashcroft v. Iqbal, 556 U.S. 662 (2009), and held that "after
Iqbal, there is no special rule for supervisory liability.
Instead, a plaintiff must plead and prove 'that each Government-
official defendant, through the official's own individual
actions, has violated the Constitution.'"  Tangreti, 983 F.3d at
618 (quoting Iqbal, 556 U.S. at 676).  Thus, the court considers
whether Collymore has alleged facts showing that each defendant
"personally knew of and disregarded an excessive risk" to his

13

**A14**

health and safety.  Id. at 619 (citations and internal quotation
marks omitted).

Collymore alleges that he sent a letter to commissioner
Cook but did not receive a response.  The fact that a
supervisory official did not act in response to a letter from an
inmate is insufficient to establish that official's personal
involvement.  Delee v. Hannigan, 729 F. App'x 25, 32 (2d Cir.
2018) (affirming dismissal of supervisory liability claim based
on failure to respond to letter).  Thus, Collymore fails to
state a cognizable claim against Cook.

Wardens Chapdelain and Martin are not medical providers.
Collymore alleges that he wrote letters to warden Chapdelain and
spoke to him about his medical issues during the five years he
was confined at MacDougall.  He alleges no facts regarding the
content of the letters of conversations.  During that time,
however, Collymore was being seen in the medical unit.  Prison
administrators are entitled to defer to the opinions of medical
providers.  See Siminausky v. Sean, No. 3:14-cv-243(VLB), 2017
WL 391425, at *4 (Jan. 25, 2017).  As warden Chapdelain was
entitled to rely on the medical care being provided to
Collymore, Collymore fails to state a cognizable claim against
Chapdelain.

Collymore wrote to warden Martin seeking treatment by a dermatologist.  Warden Martin acted in response to the letter because he informed Collymore that non-emergency medical visits were suspended due to the covid-19 pandemic.  The fact that the warden was unable to give Collymore the relief he sought in March 2020 and later in July 2020, does not establish a claim for supervisory liability.  The supervisory liability claims against commissioner Cook and wardens Chapdelain and Martin are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## IV.  Grievance Responses

Collymore's claim against the defendant, Brennan, relates to her handling of his medical grievances.  He alleges that she improperly returned grievances without disposition and decided grievance appeals.

Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed.  See Riddick v. Semple, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes ... create federally protected due process entitlements to specific state-mandated procedures'") (quoting Holcomb v.

15

**A16**

Lykens, 337 F.3d 217, 224 (2d Cir. 2003)).

As Collymore has no constitutional right to have his
grievances properly processed or to have state grievance
procedures followed, his claim against Brennan is dismissed
pursuant to 28 U.S.C. § 1915A(b)(1).

**V.    Official Capacity Claims**

Collymore seeks damages from all defendants but does not
specify whether he seeks those damages in their individual or
official capacities.  The Eleventh Amendment prohibits an award
of damages against state officials in their official capacities
unless the state has waived that immunity or Congress has
abrogated it.  Kentucky v. Graham, 473 U.S. 159, 169 (1995).
Section 1983 does not abrogate state sovereign immunity.  Quern
v. Jordan, 440 U.S. 332, 343 (1979).  Nor has Collymore alleged
any facts suggesting that the state has waived immunity in this
case.  Thus, all claims for damages against the defendants in
their official capacities are dismissed pursuant to 28 U.S.C. §
1915A(b)(2).

**VI. Declaratory Relief**

Collymore requests declaratory relief in the form of a
statement indicating that the defendants violated his Eighth
Amendment rights.  Declaratory relief serves to "settle legal

16

**A17**

rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationship." <u>Colabella v. American Inst. of Certified Pub. Accountants</u>, No. 10-CV-2291(KAM)(ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citation omitted). As such, "[d]eclaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages." <u>Orr v. Waterbury Police Dep't</u>, No. 3:17-CV-788(VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018).  In <u>Orr</u>, the court dismissed the request for declaratory judgment that the defendants had violated the plaintiff's Fourth Amendment rights during his arrest because the request "concern[ed] past actions."  <u>Id.</u>  Collymore seeks a declaration that the defendants violated his Eighth Amendment rights, a request based on past actions.  Thus, it is not a proper subject for declaratory relief and his request for such relief is dismissed.

     In addition, "dismissal of a declaratory judgment action is warranted where the declaratory relief plaintiff seeks is duplicative of his other causes of action." <u>Kuhns v. Ledger</u>, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016) (citation, alterations, and ellipsis omitted).  If Collymore prevails on his Eighth Amendment claim, a judgment in his favor would serve the same

purpose as a declaration that the conditions were unconstitutional.  Thus, Collymore's request for declaratory relief is not distinct from the relief sought for his section 1983 claims and is dismissed.  See, e.g., United States v. $2,350,000.00 in Lieu of One Parcel of Property Located at 895 Lake Avenue, Greenwich, Connecticut, 718 F. Supp. 2d 215, 229 n.7 (D. Conn. 2010) (noting that if property is not forfeited, receiver-claimants would have been shown to be prevailing innocent owners and declaration to that effect would be redundant).

**CONCLUSION**

The complaint is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b).

Collymore may filed an amended complaint against Drs. Doe 2 and Doe 3 only if he can allege facts showing that one or both doctors treated him frequently and did not alter treatments that proved ineffective.  Any amended complaint shall be filed within thirty days from the date of this order.

**SO ORDERED** this 2nd day of April 2021, at Hartford, Connecticut.

/s/
_____
Alfred V. Covello
United States District Judge

18

**A19**

# District Court's April 19, 2021 Ruling and Order on Motion to Amend

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
ANTHONY T. COLLYMORE,          :
   plaintiff,                  :
                               :
      v.                       :
                               :  CASE NO. 3:21-cv-303 (AVC)
COMMISSIONER OF CORRECTION,    :
ET AL.,                        :
   defendants.                 :
                               :
                               :
```

**RULING AND ORDER**

The plaintiff, Anthony T. Collymore, files this case <u>pro se</u> pursuant to 42 U.S.C. § 1983.  On April 2, 2021, the court dismissed the complaint without prejudice to Collymore filng an amended complaint, if he could allege facts showing that the defendants identified as doctors Doe 2 and Doe 3 "treated him frequently and did not alter treatments that proved ineffective."  The court instructed Collymore that any amended complaint should be filed within thirty days.

In response to that order, Collymore has filed two motions. In the first, he seeks to identify the two defendants as Dr. Feder and nurse Kara Phillips.  This motion is granted.

In the second motion, Collymore moves to amend his complaint and stay judgment in this case until after he attends

a dermatology consult.  He does not indicate when this consult
will occur.  As the court already permitted Collymore to amend
his complaint, the request to amend is denied as moot.  The
court declines to stay this case for an indefinite period.  If
Collymore wishes to proceed with this case, he shall file an
amended complaint describing the actions of Dr. Feder and nurse
Phillips.  As the court previously noted, he must allege facts
showing that they treated him frequently but did not alter
ineffective treatments.  If, after the consult, Collymore wishes
to supplement his allegations, he may then file a motion for
leave to file a supplemental complaint.

Collymore's motion to amend parties [Doc. No. 8] is GRANTED
and his motion to amend [Doc. No. 9] is DENIED.  Collymore is
afforded one last chance to file an amended complaint against
Dr. Feder and nurse Phillips.  Any amended complaint must be
filed within thirty days from the date of this order, or the
case will be dismissed with prejudice.

**SO ORDERED** this 19th day of April 2021, at Hartford,
Connecticut.

/s/
Alfred V. Covello
United States District Judge

2

**A22**

**District Court's September 10, 2021 Ruling on Motion to Dismiss**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**


ANTHONY T. COLLYMORE,          :
  plaintiff,                   :
                             :
    v.                           :     CASE NO. 3:21-cv-303 (AVC)
                             :
COMMISSIONER OF DOC, ET AL.,   :
  defendants.                  :


**<u>RULING ON MOTION TO DISMISS [Doc. #23]</u>**

The plaintiff, Anthony T. Collymore, commenced this civil rights action <u>pro se</u>.  On April 2, 2021, the court dismissed all claims and permitted Collymore to file an amended complaint against doctors identified as Doe 2 and Doe 3, if he could allege facts showing that these two defendants treated his scalp condition frequently and did not alter ineffective treatments. In response, Collymore filed an amended complaint against APRN Chena McPherson, nurse Krystal Myers and nurse/medical supervisor K. Phillips.

The defendants, Myers and Phillips, have appeared and filed a motion to dismiss all claims on the ground that they are protected by qualified immunity.  For the following reasons, the motion to dismiss is granted.

**<u>FACTS</u>**

The amended complaint alleges the following facts.

Collymore suffers from a scalp condition that causes his

**A24**

scalp to be raw with bumps, scabs, and open sores that exude blood and pus.  The condition is painful and interferes with Collymore's ability to sleep.  The condition has worsened over time.  He has been prescribed sebex shampoo which is ineffective and has been promised a dermatology consult which has not occurred.

On April 22, 2019, Collymore submitted a request for medical treatment for his worsening scalp condition.  The request was ignored.  On May 14, 2019, Collymore saw McPherson on another matter.  He told her that the sebex shampoo was ineffective and requested examination by a specialist.  McPherson examined Collymore's scalp, continued the sebex shampoo prescription, and did not refer him to a doctor.  In her report on the meeting, McPherson described the condition as a rash and did not mention the open sores.

On May 21, 2019, Collymore again saw McPherson.  She made him choose whether she would address his scalp or his heart condition at the visit.  When he apparently chose his heart condition, she did not refer to his complaints about his scalp in her report.

On August 14, 2019, Collymore saw McPherson for complaints that his scalp was infected.  McPherson prescribed a different shampoo for two months and a cream for three months.  Collymore received sebex shampoo, not the different shampoo prescribed,

and the cream lasted only one month.

On September 16, 2019, Collymore saw APRN Elizabeth Heap, who prescribed a different cream that proved ineffective.

Collymore saw Myers in October 2019.  He showed her his scalp and asked to be seen by a doctor.  Although Myers said she would put Collymore on the list to see a doctor, he alleges that she did not do so.  She also downplayed his scalp condition in her report.

On December 8, 2019, Collymore sought assistance from a block officer.  When Myers refused to see him while performing other duties in the housing unit, Collymore was sent to the medical building and seen there by Myers.  Collymore became loud and emotional when Myers refused to call a doctor to view the open sores on his scalp.  Other nurses intervened and examined Collymore's scalp and determined that it was infected.  They ordered Myers to provide antibiotics for two weeks and a doctor examination the following day.  Myers gave Collymore enough antibiotics for a few days.  Although she said she would give him the remainder later, she never did.

On December 12, 2019, Collymore was transferred from MacDougall Correctional Institution to Corrigan Correctional Center.  On December 16, 2019, an APRN provided him the remainder of the antibiotics that Myers failed to give him.  He was told that he would be added to the list to see a

dermatologist.

On January 13, 2020, Collymore saw another APRN because his condition had worsened.  He was again prescribed antibiotics and was told that he would be moved to the top of the list to see a dermatologist.

On February 21, 2020, Collymore wrote to Phillips stating that his condition had worsened and he needed to see a doctor. She did nothing.  Collymore wrote Phillips again on March 1, 2020 and March 18, 2020.  She provided no treatment, only stating that he would be seen by a dermatologist.

On September 10, 2020, Collymore wrote to Phillips asking to go to the hospital to have his scalp treated.  She provided no treatment, only stating that he was on the list to see a dermatologist.  On December 22, 2020, Collymore wrote to Phillips complaining that his scalp was inflamed.  She again responded that he was on the list for a dermatology consult.

On May 9, 2021, Collymore complained about his inability to sleep because of scalp pain and the block officer sent him to the medical unit.  Collymore received no treatment but was added to the list to see a doctor.

On May 12, 2021, Collymore again complained to the block officer and was sent to the medical unit.  He was seen by a nurse or physician named Rader who prescribed antibiotics.

Collymore's scalp currently is 50% covered by scabs and 25%

covered by open sores.  His hair is thinning.

## STANDARD

To withstand a motion to dismiss filed pursuant to Federal
Rule of Civil Procedure 12(b)(6), "a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'" Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Id.  The
plausibility standard is not a probability requirement; the
pleading must show, not merely allege, that the pleader is
entitled to relief.  Id.  Legal conclusions and "[t]hreadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements," are not entitled to a presumption of
truth.  Id.  However, when reviewing a motion to dismiss, the
court must accept the factual allegations in the operative
complaint as true and draw all reasonable inferences in the non-
movant's favor.  Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir.
2012).

## DISCUSSION

The court permitted this case to proceed on the federal
claims for deliberate indifference to serious medical needs.

5
**A28**

Myers and Phillips have filed a motion to dismiss on the ground that they are protected by qualified immunity.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity may be asserted on a motion to dismiss because "qualified immunity provides government officials 'immunity from suit rather than a mere defense to liability.'"  Looney v. Black, 702 F.3d 701, 705 (2d Cir. 2012) (quoting Pearson, 555 U.S. at 231).

However, a defendant asserting a qualified immunity defense on a motion to dismiss must overcome a "formidable hurdle," McKenna v. Wright, 386 F.3d 432, 434 (2d Cir. 2004), as "'the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense.'"  Neary v. Wu, 753 F. App'x 82, 84 (2d Cir. 2019) (quoting McKenna, 386 F.3d at 436). A defense of qualified immunity will support a motion to dismiss, therefore, only if the plaintiff cannot state any facts that would prevent application of qualified immunity.  McKenna, 386 F.3d at 436.

In considering whether a state official is protected by

qualified immunity, the court must determine "(1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013).  Thus, qualified immunity would be denied to an official only if (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) the right was clearly established at the time of the challenged conduct and it was objectively unreasonable for the official to believe her conduct was lawful.  See Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citation omitted).  The district court has the discretion to determine, in light of the particular circumstances surrounding the case, which of the two prongs of the qualified immunity standard to address first.  See Johnson v. Perry, 859 F.3d 156, 170 (2d Cir. 2017) (quoting Pearson, 555 U.S. at 236).

Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." Distiso v. Cook, 691 F.3d 226, 240 (2d Cir. 2012) (quoting Messerschmidt v. Millender, 565 U.S. 535, 553 (2012)).  "The qualified immunity standard is 'forgiving' and 'protects all but

the plainly incompetent or those who knowingly violate the law.'" Grice v. McVeigh, 873 F.3d 162, 166 (2d Cir. 2017) (quoting Amore v. Novarro, 624 F.3d 522, 530 (2d Cir. 2010)).

Recently, the Supreme Court addressed the issue of qualified immunity and stated that "it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" White v. Pauly, ___ U.S. ___, 137 S. Ct. 548, 552 (2017) (quoting al-Kidd, 563 U.S. at 742); see also City of Escondido v. Emmons, ___ U.S. ___, 139 S. Ct. 500, 503 (2019) ("Under our cases, the clearly established right must be defined with specificity.  'This Court has repeatedly told courts . . . not to define clearly established law at a low level of generality.'") (quoting Kisela v. Hughes, 584 U.S. ___, 138 S. Ct. 1148, 1152 (2018) (per curiam)).  The legal principle at issue must clearly prohibit the officer's conduct in the particular circumstances before him.  District of Columbia v. Wesby, ___ U.S. ___, 138 S. Ct. 577, 590 (2018); see also Grice v. McVeigh, 873 F.3d 162, 166 (2d Cir. 2017) ("rights are only clearly established if a court can 'identify a case were an officer acting under similar circumstances' was held to have acted unconstitutionally") (quoting White, 137 S. Ct. at 552).  However, it is not necessary to identify a decision squarely on point to defeat qualified immunity.  See Anderson v. Creighton,

483 U.S. 635, 640 (1987) ("That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful….").

In considering whether a right is clearly established, the court must consider Supreme Court or second circuit cases and determine what a reasonable officer would understand in light of that law.  Terebesi v. Torreso, 764 F.3d 217, 231 (2d Cir. 2014); see Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011) ("district court decisions—unlike those from the courts of appeal—do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity").  The court considers whether a holding prohibits the conduct in question as well as whether decisions clearly foreshadow such a ruling.  Terebesi, 764 F.3d at 231.  Absent a "case of controlling authority" or "a consensus of cases of persuasive authority," the officers "cannot have been 'expected to predict the future course of constitutional law.'"  Wilson v. Layne, 526 U.S. 603, 617 (1999) (quoting Procunier v. Navarette, 434 U.S. 555, 562 (1978)).

Collymore contends that the defendants were deliberately indifferent to his serious medical need.  To prevail on his claim, Collymore must establish that his scalp condition is a serious medical need and that the defendants acted with a sufficiently culpable state of mind.  See Smith v. Carpenter,

**A32**

316 F.3d 178, 184 (2d Cir. 2003) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)).

In their argument that they are protected by qualified immunity, the defendants focus on the first element, arguing that they were not on notice that Collymore's scalp condition was a serious medical need.

There are no United States Supreme Court or second circuit cases holding that a scalp condition causing painful open sores is a serious medical need.  Further, there are no district court cases foreshadowing such a ruling.  Rather, district courts within the second circuit considering similar conditions have held that the conditions are not a serious medical need.  See, e.g., El-Massri v. New Haven Corr. Ctr., No. 3:18-cv-1249(CSH), 2019 WL 6606457, at *7 (D. Conn. Dec. 5, 2019) ("skin rash or condition, even one that involved bleeding and scarring, is not a medical condition that gives rise to an Eighth Amendment deliberate indifference claim, even where there are delays in treatment"); Reid v. Nassau Cty. Sheriff's Dep't, No. 13-CV-1192(SJF)(SIL), 2014 WL 4185195, at *20 (E.D.N.Y. Aug. 20, 2014) ("a persistent skin rash or infection does not constitute a sufficiently serious medical need"); Samuels v. Jackson, No. 97-CV-2420(MBM), 1999 WL 92617, at *1-3 (S.D.N.Y. Feb. 22, 1999) (holding that inmate's skin conditions—"papules, vesicles, pustules, burrows, and intense itching" causing "constant

scratching of the affected areas, . . . open sores, and abrasion" and making "permanent scars"—failed to constitute sufficiently serious medical condition).

Absent controlling authority holding, or even suggesting, that Collymore's condition is a serious medical need, the defendants are protected by qualified immunity on the claim.

<u>**CONCLUSION**</u>

The defendants' motion to dismiss [**Doc. #23**] is **GRANTED** on the ground that the defendants, Myers and Phillips, are protected by qualified immunity.  Although defendant McPherson has not yet been served, this ruling applies equally to the claims asserted against her.  Thus, all claims against defendant McPherson are **DISMISSED** as she is protected by qualified immunity.

The clerk is directed to enter judgment and close this case.

**SO ORDERED** at Hartford, Connecticut, this 10th day of September 2021.

_____
            /s/
Alfred V. Covello
United States District Judge

# District Court's Judgment

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ANTHONY T. COLLYMORE,       :
 Plaintiff,                  :
                              :
      v.                    :   CASE NO. 3:21-CV-00303 (AVC)
                              :
COMMISSIONER OF DOC.,     :
K. PHILLIPS, KRYSTAL MYERS  :
and CHENA McPHERSON,    :
 Defendants.              :

## JUDGMENT

This action having come before the Court for consideration of the defendants' motion to dismiss, before the Honorable Alfred V. Covello, United States District Judge; and the Court having considered the motion and the full record of the case including applicable principles of law, and having issued a ruling granting the defendants' motion to dismiss on September 10, 2021, it is hereby,

ORDERED, ADJUDGED and DECREED that judgment be and is hereby entered dismissing the case in accordance with the ruling on September 10, 2021.

Dated at Hartford, Connecticut, this 10th day of September, 2021.

ROBIN D. TABORA, Clerk

By: /s/ Renée A. Alexander
    Renée A. Alexander
    Deputy Clerk

Entered on Date: 9/10/2021

**A36**

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 11,880 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Omar A. Khan
OMAR A. KHAN

June 22, 2022